# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 12, 2016 Session

## CHRISTINA LEE CAIN-SWOPE v. ROBERT DAVID SWOPE

**Appeal from the Circuit Court for Davidson County**
**No. 13D991     Philip E. Smith, Judge**

---

**No. M2015-00872-COA-R3-CV – Filed December 23, 2016**

---

In this divorce action, the wife appeals, contending the trial court erred in calculating her child support obligation by failing to impute income to the husband and by not deviating downward from the child support guidelines for the private school tuition and expenses she pays. The wife also contends the trial court erred in awarding the husband alimony in futuro in the amount of $2,400, and ordering her to pay $10,000 of the husband's attorney's fees. The wife further contends the trial judge made statements during opening arguments regarding the issue of alimony that indicated bias. As for child support, the wife is correct in stating that the trial court did not consider a deviation in child support for extraordinary educational expenses; however, the wife did not request a deviation and the parties agreed that the wife is not required to pay for private school tuition after the divorce. Accordingly, we find no error with the trial court not considering a deviation based on the possibility that the wife may or may not incur extraordinary educational expenses in the future. As for the amount of alimony to be paid, the trial court's findings of fact concerning the wife's ability to pay and the husband's need for alimony fail to satisfy the mandatory requirements of Tenn. R. Civ. P. 52.01. Therefore, we vacate the award of alimony in the amount of $2,400 per month and remand for the trial court to make findings of fact and state separately its conclusions of law concerning the wife's ability to pay and the husband's need for alimony, and direct the entry of a judgment setting the appropriate amount of alimony in futuro. We affirm the trial court in all other respects.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Affirmed in part; Vacated in part; and Remanded

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Sarah Richter Perky, Nashville, Tennessee, for the appellant, Christina Lee Cain-Swope.

Michael K. Parsley, D. Scott Parsley, and Joshua G. Strickland, Nashville, Tennessee, for the appellee, Robert David Swope.

## OPINION

Christina Cain-Swope ("Wife") and Robert Swope ("Husband") married in 1991 and are the parents of two minor children and one adult child. Wife is a medical doctor employed at Vanderbilt University Medical Center ("Vanderbilt"). Husband, who has a bachelor's degree in Fine Arts, maintained full-time employment outside of the home during the first four years of the marriage. Husband became a stay-at-home parent in 1995 after the birth of their first child; he returned to full-time employment outside of the home in 2011 and is employed at Trader Joe's grocery store.

Wife filed a complaint for divorce in March 2013 alleging irreconcilable differences and inappropriate marital conduct. Husband answered and filed a counter-complaint alleging irreconcilable differences and inappropriate marital conduct by Wife. Husband also requested to be appointed primary residential parent of the parties' two minor children. Thereafter, Wife filed an amended petition seeking designation as primary residential parent.

The matter was heard over five days in 2014 and 2015.[1] In a Memorandum Opinion and Final Decree of Divorce entered on April 8, 2015, the trial court declared the parties divorced, and named Wife primary residential parent of the parties' minor children, ages fifteen and twelve at the time of trial. The trial court also ordered Wife to pay Husband $2,400 per month in alimony in futuro, $793 per month in child support, and $10,000 of Husband's attorney's fees. Wife timely filed this appeal.

### STANDARD OF REVIEW

"In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. If the trial court makes the required findings of fact, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing Tenn. R. App. P. 13(d)). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 595, 598-99 (Tenn. Ct. App. 2006) (citations omitted).

---

[1] Specifically, the case was tried over three days in 2014 (September 30, November 10, and December 13) and two days in 2015 (January 6 and 29).

Requiring trial courts to make findings of fact and conclusions of law is generally viewed by courts as serving three purposes. First, findings and conclusions facilitate appellate review by affording a reviewing court a clear understanding of the basis of a trial court's decision. Second, findings and conclusions also serve "to make definite precisely what is being decided by the case in order to apply the doctrines of estoppel and res judicata in future cases and promote confidence in the trial judge's decision-making." A third function served by the requirement is "to evoke care on the part of the trial judge in ascertaining and applying the facts." Indeed, by clearly expressing the reasons for its decision, the trial court may well decrease the likelihood of an appeal.

*Lovlace v. Copley*, 418 S.W.3d 1, 34-35 (Tenn. 2013) (internal citations and footnotes omitted).

While there is no bright-line test by which to assess the sufficiency of the trial court's factual findings, the general rule is that "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Id.* at 35. "Simply stating the trial court's decision, without more, does not fulfill [the Rule 52.01] mandate." *Gooding v. Gooding*, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015) (quoting *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *8 (Tenn. Ct. App. Oct. 24, 2012)).

If the trial court fails to explain the factual basis for its decisions, the appellate court "may conduct a de novo review of the record to determine where the preponderance of the evidence lies or remand the case with instructions to make the requisite findings of fact and conclusions of law and enter judgment accordingly." *Id.* at 783 (citing *Lovlace*, 418 S.W.3d at 36); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997); *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005)).

Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

**ANALYSIS**

Wife raises the following issues: (1) whether the trial court's statements during opening arguments indicated bias such that this court should review the issue of alimony de novo on the record with no presumption of correctness; (2) whether the trial court erred in calculating child support consistent with the Tennessee Child Support Guidelines by failing to find Husband voluntarily underemployed and by failing to make a deviation

- 3 -

in child support for extraordinary educational expenses incurred by Wife for the benefit of the minor children; (3) whether the trial court erred in the amount, duration, and type of alimony awarded to Husband; (4) whether the trial court erred in awarding Husband $10,000.00 in attorney's fees; and (5) whether Wife should be awarded her attorney's fees at trial and on appeal. Husband also requests an award of attorney's fees on appeal. We will address each in turn.

## I. BIAS OF THE TRIAL COURT

Wife contends on appeal that the trial judge made statements during opening arguments concerning the issue of alimony that indicate bias or prejudice. She does not complain that the trial judge had a personal bias or prejudice toward her, her attorney, or in regard to any other issue; rather, Wife contends the trial judge prejudged the factual issues related to alimony prior to the presentation of any proof.[2]

"The right to a fair trial before an impartial tribunal is a fundamental constitutional right." *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)); *see also* Tenn. Const. art. VI, § 11 ("No Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested[.]"). To ensure not only that a partisan judge will not sit but also that no reasonable person will suspect it, Tennessee Supreme Court Rule 10, Code of Judicial Conduct Rule 2.11(A) (hereinafter "Rule 2.11") delineates specific circumstances in which a judge's recusal is mandatory.[3] Rule 2.11 also provides that a judge "shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]" "[T]he underlying intent of the recusal rules is to 'to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor.'" *Groves v. Ernst-W. Corp.*, No. M2016-01529-COA-T10B-CV, 2016 WL 5181687, at *4-6 (Tenn. Ct. App. Sept. 16, 2016) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)), *no perm. app. filed*.

---

[2] Instead of ordering recusal and remanding the matter for a new trial on the issue of alimony, Wife asks this court to review the issue of alimony de novo with no presumption of correctness so as to avoid significant financial hardship to the parties that would preclude a final disposition of this matter. Wife further contends that the record on appeal is a "full and accurate portrayal of the issue of alimony and a new hearing would result in a regurgitation of the same proof presented during the trial of this matter."

[3] Generally, Rule 2.11 mandates disqualification for: (1) personal bias or prejudice; (2) family members who are a party, lawyer, interested person, or likely material witness; (3) family members with an economic interest in the subject matter; (4) campaign contributions by an interested party large enough to cause the judge's impartiality to be reasonably questioned; (5) public statements that commit the judge to a particular result; and (6) prior participation in the case. Tenn. Sup. Ct. R. 10, RJC 2.11.

The procedures to be employed to determine whether a trial judge should be disqualified are set out in Tennessee Supreme Court Rule 10B. The rule expressly provides that any party seeking disqualification or recusal of a trial judge "shall do so by a timely filed written motion."[4] Tenn. S. Ct. R. 10B, § 1.01. Thus, a recusal motion must be "filed promptly after the facts forming the basis for the motion become known, and the failure to assert them in a timely manner results in a waiver of a party's right to question a judge's impartiality." *Duke v. Duke*, 398 S.W.3d 665, 670 (Tenn. Ct. App. 2012) (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998)). Moreover, our "[c]ourts frown upon the manipulation of the impartiality issue to gain procedural advantage and will not permit litigants to refrain from asserting known grounds for disqualification in order 'to experiment with the court . . . and raise the objection later when the result of the trial is unfavorable.'" *Kinard*, 986 S.W.2d at 228 (quoting *Holmes v. Eason*, 76 Tenn. 754, 757 (1882)).

Here, the statement forming the basis of Wife's claim of bias was made by the trial judge on the first day of trial; however, Wife failed to raise the issue of the trial judge's alleged bias at any time during the lengthy trial court proceedings. Instead, the first time Wife raised the issue was in this appeal. This delay compels the conclusion that Wife elected to employ the claim of bias as her "ace in the hole" in the event that she lost the trial on the merits. *See Eldridge v. Eldridge*, 137 S.W.3d 1, 8 (Tenn. Ct. App. 2002) (quoting *Gotwald v. Gotwald*, 768 S.W.2d 689, 694 (Tenn. Ct. App. 1988)). As we have previously stated, courts "will not permit litigants to refrain from asserting known grounds for disqualification in order to 'experiment with the court . . . and raise the objection later when the result of the trial is unfavorable.'" *Kinard*, 986 S.W.2d at 228 (quoting *Holmes*, 76 Tenn. at 757). Therefore, Wife's claim of bias is waived.

Even though Wife's issue regarding the alleged bias and appearance of impropriety of the trial court is waived as untimely, we will address the merits of Wife's issue in order to foster and preserve the public's confidence in judicial neutrality. *See Davis v. Tenn. Dep't of Employment Sec.*, 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999). Wife insists that the trial judge expressed definitive opinions about Wife's opposition to an award of alimony in futuro prior to the merits of the case being heard. In support of her position, Wife relies on the following exchange between the trial judge and counsel for Wife during opening statements:

> The Court: [Y]ou're telling me [Husband] has the ability to generate as much income as [Wife] does because he's done it in the past?

---

[4] The rule goes on to state that the motion "shall be supported by an affidavit under oath or a declaration under penalty of perjury on personal knowledge and by other appropriate materials," and "shall state, with specificity, all factual and legal grounds supporting disqualification of the judge and shall affirmatively state that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Tenn. S. Ct. R. 10B, § 1.01.

[Counsel]: I'm not . . . stating that. We have said it's an alimony case. I just do not believe it is forever. He has the ability to get himself back on his feet. He has a degree.

The Court: *Let's agree to disagree on that. I will allow you to make your record.*

(Emphasis added). Wife contends that "[a] person of ordinary prudence would assuredly believe that the trial court had taken a position unfavorable to [Wife] and prejudged the factual issues related to the award of alimony" based on these statements.

A judge's comments and actions must be construed in the context of all surrounding facts and circumstances to determine whether a reasonable person would construe them as indicating partiality on the merits of the case. *Groves*, 2016 WL 5181687, at *5 (citing *Alley v. State*, 882 S.W.2d 810, 822 (Tenn. Crim. App. 1994)).

[T]he terms "bias" and "prejudice" generally refer to a state of mind or attitude that predisposes a judge for or against a party or its case. *See Alley*, 882 S.W.2d at 821. However, not all unfavorable dispositions toward an individual or case can be properly described by those terms. The words suggest a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate because it is excessive, undeserved, or rests on knowledge the subject should not possess. *Liteky* [*v. United States*, 510 U.S. 540, 550, 114 S. Ct. 1147, 1154, 127 L. Ed. 2d 474 (1994)]. Accordingly, not every favorable or unfavorable opinion that a judge has of a party or case will be grounds for recusal. *See Alley*, 882 S.W.2d at 821.

Forming an opinion of litigants and issues based on what is learned in the course of judicial proceedings is necessary to a judge's role in the judicial system. *Liteky*, 510 U.S. at 550-51 ("If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." (quoting *In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (2d Cir. 1943))). As such, an opinion formed on the basis of what a judge properly learns during judicial proceedings, and comments that reveal that opinion, are not disqualifying unless they are so extreme that they reflect an utter incapacity to be fair. *See Alley*, 882 S.W.2d at 821 ("[I]f the bias is so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial."). Judicial expressions of impatience, dissatisfaction, annoyance, and even anger towards counsel, the parties, or the case, will not ordinarily support a finding of bias or prejudice unless they indicate partiality on the merits of the case. *Id.* at 822. Likewise, adverse rulings of a

trial judge, even if erroneous, numerous, and continuous, are generally proper grounds for appeal, not for recusal. *Id.* at 821-22.

On the other hand, in-court comments that reflect a judge's unfavorable disposition towards a party based on an extrajudicial source may be grounds for disqualification if they raise reasonable questions about the judge's impartiality. *See id.* at 822. Of course, that is not to say that judges must magically shed their opinions, values, and moral convictions when they take the bench. Jeffery M. Sharman et al., *Judicial Conduct and Ethics*, § 4.06, at 4-15 (5th ed. 2013) (hereinafter "*Judicial Conduct and Ethics*"). Alone, a judge's personal political, moral, and social views are generally insufficient to disqualify a judge. *Id.* All of a judge's comments and actions must be construed in the context of all surrounding facts and circumstances to determine whether a reasonable person would construe them as indicating partiality on the merits of the case. *See Alley*, 882 S.W.2d at 822.

*Groves*, 2016 WL 5181687, at *5 (internal footnote omitted).

Applying the principles above to the occurrence at issue in this case, we conclude that the evidence cited, whether examined separately or collectively, does not demonstrate any reasonable basis for questioning the judge's impartiality. As noted earlier, "an opinion formed on the basis of what a judge properly learns during judicial proceedings, and comments that reveal that opinion, are not disqualifying unless they are so extreme that they reflect an utter incapacity to be fair." *Id*. (citing *Alley*, 882 S.W.2d at 821). This matter had been pending before the same judge for nearly two years. In this case, the judge's statements do not suggest that he made a predetermined decision on the merits of the case.

The statements that Wife claims exhibit bias and an appearance of impropriety of the trial court occurred during the course of the litigation, yet no action was taken on behalf of Wife to seek recusal of the trial judge. Further, Wife's claims would not be viable even if she preserved the issue for appeal. Accordingly, we find no merit to this issue.

## II. CHILD SUPPORT

The trial court ordered Wife to pay Husband $793 per month in child support. In setting the parties' income for child support purposes, the trial explicitly found neither Wife nor Husband voluntarily underemployed. The trial court made specific findings of fact to support its determination that, although Wife left a more lucrative private practice where she was making $250,000 per year, Wife was not underemployed because the proof indicated that the parties agreed she would take less income in order to accept the

position at Vanderbilt. Likewise, the trial court made specific findings of fact to support its determination that, although Husband has a bachelor's degree in Fine Arts, he was not underemployed because the parties agreed that he would be a stay-at-home parent for much of the marriage.

Having determined that neither spouse was underemployed, the court proceeded to determine each parent's pro-rata share of the Basic Child Support Obligation. *See* Tenn. Comp. R. & Regs. ch. 1240-02-04-.03.[5] Following the appropriate protocols, the trial court utilized the child support worksheets, which were based on the parents' respective income shares, parenting time, and other appropriate criteria.[6] As part of this process, the trial court specifically found that Wife's gross income was $154,000 per year, or $12,833.33 per month, which was based on Wife's salary at Vanderbilt. The trial court also specifically found that Husband's gross income was $26,647.44 per year, or $2,220.62 per month, which was based on Husband's pay from Trader Joe's at an hourly rate of $13.85 at thirty-seven hours per week.

Wife challenges the child support award on two grounds. First, she contends the trial court erred by failing to find Husband willfully underemployed, thereby failing to impute additional income to him. Second, she contends the trial court erred in failing to make a deviation in child support for extraordinary educational expenses she incurred for the benefit of the children.

---

[5] The Basic Child Support Obligation ("BCSO") is determined by using the Child Support Schedule (the "Schedule"), "a numerical schedule . . . that establishes the dollar amount of child support obligations corresponding to various levels of parents' combined Adjusted Gross Income and the number of children for whom the child support order is being established or modified." Tenn. Comp. R. & Regs. ch. 1240-02-04-.03(6)(a). The Schedule assumes, *inter alia*, that "all families incur certain child-rearing expenses and includes in the [BCSO] an average amount to cover these expenses for various levels of the parents' combined income and number of children." Tenn. Comp. R. & Regs. ch. 1240-02-04-.03(6)(b). Specifically, "[t]he bulk of these child-rearing expenses is comprised of housing, food, and transportation," along with "[b]asic educational expenses associated with the academic curriculum for a public school education, such as fees, books, and local field trips." *Id*. Although, the BCSO does not include the child's health insurance premium, work-related childcare costs, the child's uninsured medical expenses, special expenses, or extraordinary educational expenses, the Schedule allows for deviations to the presumptive child support order relating to the aforementioned expenses. *Id.*

[6] In calculating the appropriate amount of child support, the trial court is mandated to utilize the Child Support Worksheet and Credit Worksheet provided by the Department of Human Services. *See* Tenn. Comp. R. & Regs. ch. 1240-02-04-.08 ("The Child Support Worksheet and Credit Worksheet provided by the Department are mandatory for use in calculating the appropriate child support obligation under these Guidelines.").

## A. Willful and Voluntary Underemployment

"The fairness of a child support award depends on an accurate determination of both parents' gross income or ability to support." *Massey v. Casals*, 315 S.W.3d 788, 795 (Tenn. Ct. App. 2009) (citing Tenn. Comp. R. & Regs. ch. 1240-02-04-.04(3)(a)). Typically, gross income equals a parent's earning capacity or ability to support. *Id.* In certain limited situations, however, the Tennessee Child Support Guidelines allow the court to "[i]mput[e] additional gross income to a parent . . . [i]f a parent has been determined by a tribunal to be willfully and/or voluntarily underemployed or unemployed[.]" Tenn. Comp. R. & Regs. ch. 1240-02-04-.04(3)(a)(2)(i). The regulation is designed to prevent parents from avoiding their financial responsibility to their children by unreasonably failing to exercise their earning capacity. *Massey*, 315 S.W.3d at 795.

Under Tennessee law, there is no presumption that a parent is willfully or voluntarily underemployed or unemployed; to the contrary, the party alleging that a parent is willfully or voluntarily underemployed or unemployed carries the burden of proof. *Brewer v. Brewer*, No. M2005-02844-COA-R3-CV, 2007 WL 3005346, at *8 (Tenn. Ct. App. Oct. 15, 2007) (citing Tenn. Comp. R. & Regs. ch. 1240-2-4-.04(3)(a)(2)(ii)); *Richardson v. Spanos*, 189 S.W.3d 720, 727 (Tenn. Ct. App. 2005). Determining whether a parent is willfully and voluntarily underemployed or unemployed are questions of fact that require careful considerations of all the attendant circumstances. *Richardson*, 189 S.W.3d at 726. In making this determination, the court must consider a parent's past and present employment, education, training, ability to work, and any other relevant facts. Tenn. Comp. R. & Regs. ch. 1240-02-04.04(3)(a)(2)(iii).

Because the trial court made the required findings of fact on this issue, we review the factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Kelly*, 445 S.W.3d at 692. "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *Flowers*, 209 S.W.3d at 598-99.

The evidence demonstrates that Husband has a bachelor's degree in Fine Arts from Middle Tennessee State University. After the parties married, Husband and Wife moved from Tennessee to Washington, D.C., where Wife attended medical school from 1991 to 1995. While Wife was in medical school, Husband obtained full time employment working for an art gallery as an art preparator, earning $12 to $13 per hour.[7] Husband worked at the art gallery until it closed for business in 1993. Thereafter, Husband found full-time employment as a bank teller, earning approximately $12 per

---

[7] Husband testified that his responsibilities as an art preparator included packing and shipping art, hanging art, and painting walls.

hour. Within a few months of the birth of the parties' eldest child in March of 1995, Wife graduated medical school, the parties moved back to Nashville, Tennessee, and by agreement of the parties, Husband became a stay-at-home parent.

Wife completed her residency at Vanderbilt in 1999. From 1999 to 2010, Wife worked as a private practitioner and made approximately $250,000 to $260,000 per year. Wife left private practice in 2010 to join the medical staff Vanderbilt. At the time of trial Wife remained in the employment of Vanderbilt earning $154,000 per year. Wife testified that she accepted the position at Vanderbilt in order to spend more time with the children. Husband testified that Wife "was very unhappy" in private practice and that he supported her decision to take the lesser-paying position at Vanderbilt because, *inter alia*, "[s]he was going to have a much better quality of life."

During Husband's time as a stay-at-home parent, Husband held various part-time positions, which he testified was out of his "own volition" and did not interfere with "[his] duties of taking care of the children." Husband's part-time employment included work as a sales associate for a jewelry store earning $10 to $12 per hour, as an art preparator at Cheekwood Museum earning $10 to $12 per hour, and as an art preparator at Museum Support earning $10 to $12. He also worked as a cabinet maker for his friend in exchange for Husband's use of the woodworking tools to build furniture for the parties' home. Husband continued in this role until 2011, when he began working thirty-seven hours per week at Trader Joe's. He was still employed at Trader Joe's at the time of trial earning $13.85 per hour.

Regarding Husband's employment at Trader Joe's, Wife asserted that Husband is capable of earning more money given his college education. She testified that, when Husband began looking for employment in 2010, he did not prepare a resume and submitted less than five job applications. She further testified that Husband would not submit his resume for any art teaching jobs and that he refused to apply for a salaried museum specialist position with Metro Nashville that paid $42,000 per year because it was "too stressful."

Husband admitted that his position at Trader Joe's was not demonstrative of his abilities or educational level and that he had not submitted a job application or looked for any ways to supplement his income since accepting the position. He testified that he enjoyed working at Trader Joe's. As for the museum specialist position, Husband admitted that his bachelor's degree satisfied the educational requirements for the position. He also testified that he had experience in some of the listed areas of job requirements but not all of the job requirements. With regard to seeking employment as an art teacher, Husband testified that he could not teach art in the public school system without certification, which he stated could take one to two years to obtain. He also admitted that he used the phrase "stress kills" when he and Wife discussed the possibility of him applying for a higher-paying job.

Wife contends that Husband's failure to seek higher-paying employment commensurate with his college education and professional abilities constitutes a voluntary act of underemployment. Wife insists that the trial court should have imputed $42,000 per year in income to Husband, relying on the salary of a position with Metro Nashville as a museum specialist to which Wife claims Husband "refused" to apply.

As noted above, no parent is presumed willfully or voluntarily underemployed, Tenn. Comp. R. & Regs. ch. 1240-02-04.04(3)(a)(2), and in making this determination, the court must consider a parent's past and present employment, education, training, ability to work, and any other relevant facts. *Id*. In this case, the parties agreed that Husband would be a stay-at-home parent, which limited Husband's ability to begin or maintain a career. Further, although Husband has a bachelor's degree, he has never earned more than $14 per hour. In fact, his current pay of $13.85 per hour is the highest wage he has ever been paid. Considering all the attendant circumstances, we have determined the evidence in this record does not preponderate against the trial court's finding that Husband is not voluntarily underemployed. Because Husband is not voluntarily underemployed, there is no basis upon which to impute additional income to Husband for calculating child support.

## B. Extraordinary Educational Expenses

Wife next contends that the trial court erred in failing to make a deviation in child support for her payment of private school expenses for the minor children as an extraordinary educational expense. Husband contends Wife waived this issue "by not expressly requesting an Order from the trial court requiring that the children continue to attend private school and that such expense be included in the child support worksheet." Husband goes on to state that such a request would have been without a factual foundation because the parties expressly agreed in the parenting plan that "neither parent shall be under an obligation for private school." Thus, he argues, "[Wife] wanted the best of both worlds in that she would be under no obligation to pay for private schooling but receive a credit for this expenditure on the child support worksheet." We have determined that Husband has the better argument on this issue.

The amount of child support derived from a proper application of the Tennessee Child Support Guidelines sets the presumptive amount of support. *Richardson*, 189 S.W.3d at 725; Tenn. Code Ann. § 36-5-101(e)(1)(A). As applicable here, the guidelines specifically allow for extraordinary educational expenses as a deviation from the standard child support amounts, which include, among other things, "tuition, . . . books, fees, and other reasonable and necessary expenses associated with . . . private elementary and/or secondary schooling that are appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and child were living together." Tenn. Comp. R. & Regs. ch. 1240-2-4-.07(2)(d)(1)(i). However, the Tennessee Supreme Court has declined

- 11 -

to hold that expenses incurred to send a child to private school are extraordinary educational expenses in every case because these expenses are added to the amount of child support required by the guidelines' formula and could very well impose a child support obligation on a non-custodial spouse far beyond that spouse's ability to pay. *Hoefler v. Hoefler*, No. M1998-00966-COA-R3-CV, 2001 WL 327897, at *8 (Tenn. Ct. App. Apr. 5, 2001) (citing *Brooks v. Brooks*, 992 S.W.2d 403, 408 (Tenn. 1999)), *no perm. app. filed*. "Thus, parties seeking an upward deviation from the guidelines for extraordinary educational expenses have the burden of demonstrating that they are warranted." *Id*. (citing *Jankovich v. Jankovich*, No. 01-A-01-9111-CV00427, 1992 WL 81446, at *2-3 (Tenn. Ct. App. Apr. 24, 1992)).

When making a deviation from the presumptive amount of support, the court must state "the basis for the deviation and the amount the child support order would have been without the deviation." Tenn. Comp. R. & Regs. ch. 1240-2-4-.07(1)(b); *see* Tenn. Code Ann. § 36-5-101(e)(1)(A). The guidelines further instruct that when ordering a deviation from the presumptive amount of child support established by the guidelines, the trial court's order shall contain written findings of fact explaining how application of the guidelines would be unjust or inappropriate and how the best interests of the child will be served by allowing the deviation. Tenn. Comp. R. & Regs. ch. 1240-2-4-.07(1)(c).

The trial court's Memorandum and Final Decree of Divorce is silent as to the issue of private school, with the exception of acknowledging that Wife's income and expense statement reflected the expense of private school tuition. Although Wife insists that the trial court should have deviated from the child support guidelines, there is no indication in the record that she ever expressly requested this relief from the trial court. Admittedly, both parents testified that their children have been attending private school and may continue, but neither parent asked the trial court to make it mandatory for the children to continue attending private school. To the contrary, the parties agreed that such an expense would be optional as is expressly stated in the parenting plan:

> D. Private School and College
>
> The parties agree as follows regarding private school [elementary and high school] and college or vocational training after high school:
>
> Elementary, primary, and secondary pre-college private school shall include tuition, books, uniforms, and meals and shall be calculated as an ongoing special expense on the child support worksheet if the parent opting to pay for the same does so. ***However, neither parent shall be under an obligation for private school. Naturally, there shall be no obligation for college expenditures.***

(Emphasis in original).

- 12 -

Our courts have consistently held that issues not raised in the trial court are waived and will not be entertained on appeal. *Barnhill v. Barnhill*, 826 S.W.2d 443, 458 (Tenn. Ct. App. 1991); *see also Pearman v. Pearman*, 781 S.W.2d 585, 587-88 (Tenn. Ct. App. 1989); *Lawrence v. Stanford*, 655 S.W.2d 927, 928 (Tenn. 1983). Wife did not request a deviation from the guidelines based on an extraordinary educational expense in any of her pleadings and there is no citation to the record in any of the briefs to a request for such relief by motion or during opening or closing statements; thus, the issue is waived.

For the foregoing reasons, we find no error with the trial court not considering whether a deviation would be appropriate.

III. SPOUSAL SUPPORT

Wife contends the trial court abused its discretion in awarding Husband alimony in futuro instead of rehabilitative alimony. Wife's argument as to this issue is fundamentally identical to her argument on the issue of child support as it relates to Husband's earning capacity. She also challenges the amount of alimony awarded.

We review an award of alimony under the abuse of discretion standard. *Herrera v. Herrera*, 944 S.W.2d 379, 388 (Tenn. Ct. App. 1996). Appellate courts afford the trial court "broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). The abuse of discretion standard does not permit reviewing courts to substitute their discretion for the trial court. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Nevertheless, the abuse of discretion standard of review does not immunize a trial court's decision from any meaningful appellate scrutiny. *Id*.

> [R]eviewing courts should review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions. When called upon to review a [trial] court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the [trial] court's legal determinations de novo without any presumption of correctness.

*Id.* at 524-25 (internal citations omitted).

- 13 -

Therefore, when reviewing a trial court's discretionary decision, the appellate court should determine, where applicable, whether there is a factual basis for the decision in the record, whether the court properly identified and applied the applicable legal principles, and whether the decision is within the range of acceptable alternative dispositions. *Id*. at 524.

Tennessee recognizes four different types of alimony: rehabilitative alimony, alimony in futuro, alimony in solido, and transitional alimony. Tenn. Code Ann. § 36-5-121. There is a statutory preference for rehabilitative or transitional alimony, Tenn. Code Ann. § 36-5-121(d)(2), but "[t]his statutory preference does not entirely displace the other forms of spousal support when the facts of the case warrant long-term or more open-ended support." *Henderson v. Henderson*, No. M2013-01879-COA-R3CV, 2014 WL 4725155, at *3 (Tenn. Ct. App. Sept. 23, 2014) (quoting *Gillespie v. Gillespie*, No. E2006-00734-R3-CV, 2006 WL 3732195, at *3 (Tenn. Ct. App. Dec. 19, 2006)), *no perm. app. filed*.

Alimony decisions require a careful consideration of the relevant factors in Tenn. Code Ann. § 36-5-121(i) and typically hinge on the unique facts and circumstances of the case.[8] *Oakes v. Oakes*, 235 S.W.3d 152, 160 (Tenn. Ct. App. 2007); *see also Anderton v. Anderton*, 988 S.W.2d 675, 683 (Tenn. Ct. App. 1998). While a trial court should consider all the relevant factors under the circumstance, the two most important factors to be considered are the need of the economically disadvantaged spouse and the obligor spouse's ability to pay. *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007) (citing *Robertson v. Robertson*, 76 S.W.3d 337, 342 (Tenn. 2002); *Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001); *Sullivan v. Sullivan*, 107 S.W.3d 507, 510 (Tenn. Ct. App. 2002)). When considering these two factors, the primary consideration is the disadvantaged spouse's need. *Id.* (citing *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App.1999)).

Husband and Wife married in 1991; thus, they had been married for approximately twenty-four years at the time of trial. Three children were born during the marriage: a daughter born in 1995, who was twenty years old at the time of trial; and two minor children, a daughter born in 1999 and a son born in 2002. At the time of trial, Wife was forty-six years old and Husband was fifty-five years old, and both parties were in good health, physically and mentally.

---

[8] These factors include, but are not limited to, the relative earning capacity, obligations, needs, and financial resources of each party; the relative education and training of each party; the duration of the marriage; the age, mental condition and physical condition of each party; the separate assets of each party; the provisions made with regard to the marital property; the standard of living of the parties established during the marriage; the extent to which each party has made such tangible and intangible contributions to the marriage; the relative fault of the parties; and such other factors as are necessary to consider the equities between the parties. *See* Tenn. Code Ann. § 36-5-121(i).

Wife has a medical degree and is Board Certified by the American Board of Obstetrics and Gynecology. During their marriage, Wife worked as a private practitioner for eleven years and earned $250,000 to $260,000 per year. Wife left private practice in 2010 to join the medical staff at Vanderbilt. At the time of trial, Wife remained in the employment of Vanderbilt earning $154,000 per year.

Husband has a bachelor's degree in fine arts from Middle Tennessee State University. For the first four years of their marriage, Husband maintained full-time employment outside of the home and earned $12 to $13 per hour. Following the birth of their first child, Husband and Wife agreed that Husband would become a stay-at-home parent. Husband held various part-time positions during his time as a stay-at-home parent, all of which paid approximately $10 to $12 per hour. Husband remained a stay-at-home parent until 2011, at which time he began working thirty-seven hours per week at Trader Joe's. At the time of trial, Husband was in the employment of Trader Joe's earning $13.85 per hour.

Wife conceded that the parties agreed Husband would be a stay-at-home parent but testified that Husband was to return to the workforce when their youngest child entered school, which was in 2005. Wife also testified that Husband shirked his household responsibilities, requiring Wife to work, clean, take care of the children, and, at times, hire outside help. However, during cross-examination, Wife admitted that she acquiesced to Husband remaining a stay-at-home parent. Husband testified that he has always been the primary caregiver to the parties' children and that Wife never complained of his inability to clean the home prior to Wife's filing for divorce. Husband further testified that Wife did not ask him to find employment outside of the home until sometime in 2010, following which he obtained employment at Trader Joe's.

After discussing the different types of alimony, the trial court awarded Husband alimony in futuro in the amount of $2,400 per month based upon the following:

> [T]he husband is not capable of rehabilitation within the meaning of [Tenn. Code Ann.] § 36-5-121(d)(2). The Court recognizes that the husband is fifty-five (55) years of age. The husband, by the agreement of the parties, has been a stay at home parent and homemaker for most of the marriage. The Court further finds that the husband has focused on the personal side of the marriage, including the nurturing of the children and providing for the home. The Court finds that wife has focused primarily on building the economic strength of this family. Wife is the primary wage earner. The Court finds that the husband is and will be economically disadvantaged compared to the wife.

The Court further finds that the husband cannot be rehabilitated, with reasonable effort, in a way that will permit him to enjoy the standard of living that the husband and wife enjoyed during the marriage, or the post-divorce standard of living that the wife will be permitted to enjoy. Having made these findings, the Court finds that rehabilitation of the husband is not feasible.

The Court finds that transitional alimony would not be appropriate in this matter. The husband needs more assistance to adjust to the economic consequences of this divorce.

The Court finds that it is appropriate to award the husband alimony in futuro in this case. The wife will pay the sum of Two Thousand Four Hundred Dollars ($2,400.00) per month as alimony in futuro until the husband's death or remarriage or the wife's death. The payments shall be made in equal installments of Twelve Hundred Dollars ($1,200.00) on the 1st and Twelve Hundred Dollars ($1,200.00) on the 15th of each month. The payments shall begin immediately after the sale of the marital home.

Because Wife challenges the above decision on two different grounds, we shall discuss each separately.

## A. Type of Alimony

Wife contends the trial court abused its discretion in awarding Husband alimony in futuro. She insists Husband is capable of rehabilitation. Wife's argument as to this issue is fundamentally identical to her argument on the issue of child support as it relates to Husband's earning capacity

As noted earlier, "there is a statutory bias toward awarding transitional or rehabilitative alimony over alimony in solido or in futuro." *Gonsewski*, 350 S.W.3d at 109. However, an award of alimony in futuro is appropriate "where there is relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors," including those enumerated in Tenn. Code Ann. § 36-5-121(i). Tenn. Code Ann. § 36-5-121(d)(3).[9] According to Tenn. Code Ann. § 36-5-121(f)(1):

---

[9] A benefit of alimony in futuro is that it can be modified in the event of a substantial and material change in circumstances. "An award of alimony in futuro shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A).

Such alimony [in futuro] may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that *the disadvantaged spouse is unable to achieve . . . an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable . . . to the post-divorce standard of living expected to be available to the other spouse . . . .*

(Emphasis added).

In this case, the trial court stated its findings of fact and conclusions of law in support of its determination that Husband is the disadvantaged spouse and that Wife was able to assist him. The trial court also stated its findings of fact and conclusions of law in support of its determination that Husband was not a candidate for rehabilitation or transitional alimony and that alimony in futuro was appropriate. Specifically, the trial court's determination was based in part on findings as to the ages of the parties, the relative education and training of the parties, the relative earning capacities of the parties, and the extent to which each party has made such tangible and intangible contributions to the marriage. Further, the trial court's decision was based in part on its findings that Husband's contributions as a homemaker and care-taker of the parties' children over sixteen years enabled Wife to advance her medical career throughout the marriage.

The General Assembly has specifically indicated that courts are to provide for a divorcing spouse who finds herself or himself economically disadvantaged by a decision to leave the workforce and contribute to the family as a homemaker:

(c)(1) Spouses have traditionally strengthened the family unit through private arrangements whereby one (1) spouse focuses on nurturing the personal side of the marriage, including the care and nurturing of the children, while the other spouse focuses primarily on building the economic strength of the family unit. This arrangement often results in economic detriment to the spouse who subordinated such spouse's own personal career for the benefit of the marriage. It is the public policy of this state to encourage and support marriage, and to encourage family arrangements that provide for the rearing of healthy and productive children who will become healthy and productive citizens of our state.

(2) The general assembly finds that the contributions to the marriage as homemaker or parent are of equal dignity and importance as economic contributions to the marriage. Further, where one (1) spouse suffers economic detriment for the benefit of the marriage, the general assembly finds that the economically disadvantaged spouse's standard of living after the divorce should be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living

- 17 -

expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(c)(1) & (2).

In the case at bar, Husband is clearly the disadvantaged spouse and has demonstrated a need for spousal support. He also suffered some "economic detriment" for the benefit of the parties' marriage by agreeing to be a stay-at-home parent for several years. *See id.* Although Wife insists that Husband's earning capacity is greater than his current income, we cannot ignore the fact that Husband's income at the time of trial—approximately $26,650 per year—is the highest he has ever earned. Moreover, considering, *inter alia*, Husband's age, education level compared to Wife, and the limited scope of his work experience, Husband will not be able to achieve an earning capacity that will permit his standard of living after the divorce to be reasonably comparable to the post-divorce standard of living expected to be available to Wife. *See* Tenn. Code Ann. § 36-5-121(c), (f)(1). Accordingly, the trial court did not abuse its discretion in finding that rehabilitation is not appropriate and awarding Husband alimony in futuro.

## B. Amount of Alimony

Wife next contends the amount of alimony is excessive. She asserts that she cannot afford to pay Husband $2,400 each month and will have to either deplete her marital estate or use her social security earnings.

There are no hard and fast rules for spousal support decisions, *see Anderton*, 988 S.W.2d at 682, and as we indicated earlier, the amount of alimony is within the sound discretion of the trial court in light of the particular circumstances of each case. *Gonsewski*, 350 S.W.3d at 105. This court will not alter an award absent an abuse of discretion. *Riggs*, 250 S.W.3d at 457 (citing *Lindsey v. Lindsey*, 976 S.W.2d 175, 180 (Tenn. Ct. App. 1997)). However, "[w]hen the trial court fails to explain the factual basis for its decisions, we may conduct a de novo review of the record to determine where the preponderance of the evidence lies or remand the case with instructions to make the requisite findings of fact and conclusions of law and enter judgment accordingly." *Gooding*, 477 S.W.3d at 783 (citing *Lovlace*, 418 S.W.3d at 36; *Ganzevoort*, 949 S.W.2d at 296; *Nashville Ford Tractor, Inc.*, 194 S.W.3d at 424).

As we begin our assessment of the amount of alimony awarded in this case, we are guided by the reasoning of our Supreme Court in *Crabtree v. Crabtree* wherein the Court stated:

We recognize that a trial court has wide discretion in determining whether an award of alimony should be rehabilitative or in futuro. Appellate review of findings of fact by the trial court are de novo upon the record

- 18 -

accompanied by a presumption of the correctness of the findings. *See* Tenn. R. App. P. 13(d). *See also Hanover v. Hanover*, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1989) (amount of alimony awarded is largely a matter left to the discretion of the trial court, and the appellate courts will not interfere except in the case of an abuse of discretion). The trial court is required to consider the factors set forth at Tenn. Code Ann. § 36-5-101(d)(1)(A)-(L). *In this case, the trial court stated that it considered the entire record prior to its ruling. It did not, however, make findings of fact with regard to the factors considered. Accordingly, there are no findings of fact that we may presume to be correct.*

*Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000) (emphasis added).

In this case, the trial court stated its findings of fact and conclusions of law in support of its determination that Husband was not a candidate for rehabilitation or transitional alimony and that alimony in futuro was appropriate. We have concurred in that determination. However, as for the amount of alimony awarded, that being $2,400 per month, the trial court did not state any findings of fact to support an award of that amount. The trial court simply ruled,

The Court finds that it is appropriate to award the husband alimony in futuro in this case. The wife will pay the sum of Two Thousand Four Hundred Dollars ($2,400.00) per month as alimony in futuro until the husband's death or remarriage or the wife's death. The payments shall be made in equal installments of Twelve Hundred Dollars ($1,200.00) on the 1st and Twelve Hundred Dollars ($1,200.00) on the 15th of each month. The payments shall begin immediately after the sale of the marital home.

Simply stating the trial court's decision, without more, does not fulfill the requirements of Rule 52.01. *See Gooding*, 477 S.W.3d at 782. When a trial court fails to make sufficient findings of fact, we are unable to presume there is a factual basis for the underlying decision, which in this case is the decision that $2,400 is the appropriate amount of monthly alimony. *See Crabtree*, 16 S.W.3d at 360. Moreover, because the court did not state sufficient findings of fact and conclusions of law, we are deprived of one of the primary purposes of Rule 52.01, which is to facilitate appellate review by "affording a reviewing court a clear understanding of the basis of a trial court's decision." *Lovlace*, 418 S.W.3d at 34. Simply put, the record before us fails to disclose how the trial court reached the conclusion that alimony in the amount of $2,400 per month was appropriate.

As previously discussed, the two most important factors in an award of alimony are the obligee spouse's need and the obligor spouse's ability to pay. *Gonsewski*, 350 S.W.3d at 110. After a thorough review of the record, we do not disagree that Husband

has a need for alimony. However, as to Wife's ability to pay, her income and expense statement reveals that her expenses exceed her income. Specifically, Wife lists a net monthly income of $8,486.11 and claims $8,856.57 in monthly expenses, which does not include her monthly child support obligation of $793. Thus, without a factual foundation that a significant portion of Wife's expenses are unjustified, it appears that ordering Wife to pay Husband $2,400 each month in alimony would create a substantial deficit for Wife.

Although the trial court has broad discretion in determining the amount of alimony to award to a disadvantaged spouse, it is an abuse of discretion for a trial court to order a spouse to pay alimony in an amount that would create a substantial deficit for the obligor spouse. *Ezekiel v. Ezekiel*, No. W2014-02332-COA-R3-CV, 2015 WL 4916930, at *7 (Tenn. Ct. App. Aug. 17, 2015) (citing *Hazen v. Hazen*, No. W2003-00778-COA-R3-CV, 2004 WL 1334517, at *3 (Tenn. Ct. App. June 14, 2004)); *see Walker v. Walker*, No. E2001-01759-COA-R3-CV, 2002 WL 1063948, at *5 (Tenn. Ct. App. May 29, 2002); *see also Floyd v. Floyd*, No. M2007-02420-COA-R3-CV, 2008 WL 5424014, at *12 (Tenn. Ct. App. Dec. 30, 2008) (affirming the trial court's refusal to award wife alimony where husband faced a monthly deficit)).

Because the trial court did not make adequate findings relative to its determination that Wife has the ability to pay the amount of alimony awarded to Husband, the award of alimony of $2,400 per month is vacated and the case is remanded for reconsideration of the amount of alimony, if any, to be awarded. In determining the amount of alimony, the trial court is directed to make findings of fact as to the reasonableness of each party's expenses, to ascertain the amount of alimony needed by Husband and the amount of alimony Wife is able to pay, and direct the entry of a judgment setting the appropriate amount of alimony in futuro. Whether to reopen the proof concerning this issue is left to the discretion of the trial court.

IV. ATTORNEY'S FEES

Wife contends the trial court erred in requiring her to pay a portion of Husband's attorney's fees and argues that she should have been awarded her attorney's fees at trial. Wife and Husband both request an award of attorney's fees on appeal.

A. Attorney's Fees at Trial

"It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido." *Gonsewski*, 350 S.W.3d at 113. An award of attorney's fees is appropriate when the disadvantaged spouse's income is not sufficient to pay the spouse's attorney's fees and the divorce fails to provide the spouse with a revenue source, such as from the property division or assets from which to pay the spouse's attorney's fees. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002). When determining whether to

award attorney's fees, the trial court must consider the relevant factors regarding alimony set forth in Tenn. Code Ann. § 36-5-121(i). Moreover, trial courts are afforded wide discretion in determining whether there is a need for attorney's fees as alimony in solido, and the trial court's decision will not be disturbed on appeal absent an abuse of discretion. *Gonsewski*, 350 S.W.3d at 113.

The trial court ordered Wife to pay $10,000 of Husband's reasonable and necessary attorney's fees, which was approximately one-fourth of the fees Husband incurred in the trial court. The trial court further ordered that the $10,000 be paid from Wife's share of the proceeds from the sale of the marital home. The order requiring Wife to pay $10,000 of Husband's attorney's fees reads, in pertinent part, as follows:

> The Court recognizes that both parties will be receiving substantial sums from the sale of real property. However, the Court also recognizes that the wife's income and her earning ability are far superior to that of the husband. The Court does not believe that the husband should be required to significantly deplete monies he has received as a division of property. The Court finds that the husband does need assistance in defraying at least some of his attorney's fees.

> The Court finds that the wife will be in a better position in the future to acquire assets based on her higher earning capacity. The Court further finds that the wife does have the ability through her substantially higher income to assist the husband in defraying some of the costs of representation in this matter. The Court will note that it has already found the husband to be economically disadvantaged.

> The Court therefore finds that the husband shall be awarded a judgment in the amount of Ten Thousand Dollars ($10,000.00) against the wife for his reasonable and necessary attorney's fees incurred in this matter. This judgment shall be paid at the closing of the sale of the parties' real property from the wife's share of proceeds derived from the sale.

> The Court declines to award the wife any attorney's fees in this matter.

Wife contends the trial court erred in requiring her to pay any of Husband's attorney's fees. She contends that Husband will have the ability to pay his attorney's fees as a result of the proceeds he will receive from the sale of the parties' home in Nashville. Wife also insists that she should have been awarded her attorney's fees at trial pursuant to Tenn. Code Ann. § 36-5-103(c), which reads:

> The plaintiff spouse may recover from the defendant spouse . . . reasonable attorney fees incurred in enforcing any decree for alimony . . . both upon

the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c).

We have already determined that Husband is entitled to alimony due in part to the significant discrepancy in the parties' respective incomes. Taking into account the facts discussed in detail above, we find no abuse of discretion in the trial court's determination that an award of attorney's fees of $10,000 was reasonable under the circumstances. Although we may have chosen to deny Husband's request to recover his attorney's fees incurred in the trial, it is not our prerogative to second guess the trial court in such matters. As noted above, trial courts are afforded wide discretion in determining whether to award attorney's fees. *Gonsewski*, 350 S.W.3d at 113. Therefore, we defer to the broad discretion afforded the trial court and affirm the award of $10,000 of attorney's fees to Wife.

### B. Attorney's Fees on Appeal

Wife and Husband both request an award of attorney's fees on appeal. Whether to award attorney's fees on appeal is within this court's sole discretion. *Wilson v. Wilson*, No. M2008-02073-COA-R3-CV, 2009 WL 1037943, at *4 (Tenn. Ct. App. April 17, 2009) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). In considering a request for attorney's fees, we examine "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal . . . and any other equitable factor that need be considered." *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454, at *10 (Tenn. Ct. App. Sept. 3, 2003) (citing *Folk v. Folk*, 357 S.W.2d 828, 829 (Tenn. 1962)). After considering these factors, we decline to award either party their attorney's fees on appeal.

### IN CONCLUSION

The judgment of the trial court is affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. Two-thirds of the costs of appeal are assessed against Wife and one-third of the costs are assessed against Husband.

_____
FRANK G. CLEMENT, JR., JUDGE

- 22 -