IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 10, 2019 Session

## KAREN NISENBAUM v. MICHAEL NISENBAUM

**Appeal from the Chancery Court for Williamson County**
**No. 44368      Joseph Woodruff, Chancellor**

———————————————————

**No. M2017-02330-COA-R3-CV**

———————————————————

In this divorce action, the trial court awarded Wife transitional alimony of $2,000 per month for 24 months and $1,000 per month for the next 24 months; the court denied her requests for alimony *in futuro* and for alimony *in solido* to cover the cost of future dental care. Finding no error, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court for Williamson County Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which W. NEAL MCBRAYER and KENNY W. ARMSTRONG, JJ., joined.

Brad H. Frakes, Nashville, Tennessee, for the appellant, Karen Nisenbaum.

Adam A. Zanetis, Franklin, Tennessee, for the appellee, Michael Nisenbaum.

## OPINION

Michael P. Nisenbaum ("Husband") and Karen Mary S. Nisenbaum ("Wife") married in June of 1987. Wife filed a complaint for divorce on July 27, 2015, alleging irreconcilable differences and inappropriate marital conduct; Husband answered and counter-claimed on August 19, alleging irreconcilable differences, inappropriate marital conduct, and "refusal, on the part of Wife, to remove with the Husband to this state, without a reasonable cause, and being willfully absent from the Husband residing in Tennessee for two (2) years."

The trial court heard the case in June of 2017 and entered a Memorandum and Order on October 30, *inter alia*, awarding Wife transitional alimony of $2,000.00 per month for 24 months and $1,000 per month for the next 24 months; denying her request to be awarded alimony *in solido* for future dental expenses; and holding that each party

was responsible for their own attorney's fees. Wife appeals, asserting that the trial court abused its discretion in awarding her transitional alimony rather than alimony *in futuro*, and in failing to award her dental expenses and attorney's fees as alimony *in solido*.

## I. ANALYSIS

### A. Alimony

Tennessee recognizes four distinct types of spousal support: (1) alimony *in futuro*, (2) alimony *in solido*, (3) rehabilitative alimony, and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d)(1).[1] "There are no hard and fast rules for spousal support decisions." *Anderton v. Anderton*, 988 S.W.2d 675, 682-83 (Tenn. Ct. App. 1998); *Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996). In determining whether to award spousal support, the trial court is required to consider "all relevant factors," including:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

> (3) The duration of the marriage;

> (4) The age and mental condition of each party;

> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

---

[1] Alimony *in futuro*, a form of long-term support, is appropriate when the economically disadvantaged spouse cannot achieve self-sufficiency and economic rehabilitation is not feasible. *Gonsewski*, 350 S.W.3d at 107. Alimony *in solido* is also "a form of long-term support," *id.* at 108, and "may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." Tenn. Code Ann. § 36-5-121(d)(5). Rehabilitative alimony is "a separate class of spousal support," Tenn. Code Ann. § 36-5-121(e)(1), the purpose of which is "to assist an economically disadvantaged spouse in acquiring additional education or training which will enable the spouse to achieve a standard of living comparable to the standard of living that existed during the marriage or the post-divorce standard of living expected to be available to the other spouse." *Gonsewski*, 350 S.W.3d at 108. Finally, transitional alimony may be awarded "when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded." Tenn. Code Ann. § 36-5-121(g)(1).

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). "While a trial court should consider all the relevant factors under the circumstances, the two most important factors to be considered are the need of the economically disadvantaged spouse and the obligor spouse's ability to pay." *Small v. Small*, No. M2009-00248-COA-R3-CV, 2010 WL 334637, at *3 (Tenn. Ct. App. Jan. 28, 2010). Of these two factors, "the primary consideration is the disadvantaged spouse's need." *Id.*

The standard we employ when reviewing an award of alimony was set forth in *Gonsewski v. Gonsewski:*

[A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard,* 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew* [*v. Burlew*]*,* 40 S.W.3d [465], 470 [(Tenn. 2001) ]; *Robertson v. Robertson,* 76 S.W.3d 337, 340-41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard,* 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent,* 211 S.W.3d 216, 220

(Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson,* 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright,* 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.,* 318 S.W.3d 328, 335 (Tenn. 2010).

350 S.W.3d 99, 105 (Tenn. 2011) (footnote omitted). Our review of the trial court's factual findings is *de novo* upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review the trial court's resolution of questions of law *de novo*, with no presumption of correctness. *Armbrister,* 414 S.W.3d at 692.

The trial court made extensive findings relative to the factors under section 121(i), which we repeat:

This is a 30-year marriage. Wife is a healthy, able-bodied 57-year-old woman, with some post-secondary education. She has been employed, either part-time or full-time, for substantial periods during the marriage. She is currently under-employed due to her personal choice to spend most of her available working time performing uncompensated work for her paramour, DS, in his real estate management business.

Husband's earning capacity is greater than Wife's. Husband's lowest earnings in any year of the last fifteen years were $175,000.00. His average gross income for federal income tax purposes over the last five years is $210,232.00. By contrast, Wife's highest annual earnings in her employment history were $53,599.00 in 1996. Nevertheless, Wife is confident she can earn between $40,000.00 and $50,000.00 a year once she obtains gainful employment.

Husband holds a college degree. He has worked in the industrial machine industry for most of his career. He has experience in the power transmission industry supplying power transmission belts for application in the oil extraction industry, as well as in the ball bearing manufacturing industry. Due to his age, 60, declines in the manufacturing economy nation-wide, and consolidation among businesses in his particular industry, Husband has a reasonable future horizon for working at his present level of compensation of only six or seven more years. Husband testified without contradiction, and the Court therefore finds, if he were to lose his present

job, it would be difficult for Husband to find replacement employment at his current rate of compensation in his industry. Husband is willing to relocate from Middle Tennessee, if necessary, to find new employment, but even so, Husband believes it would require a minimum of six months for him to find replacement employment. This testimony was unchallenged by Wife, and the Court finds Husband's testimony on this topic to be truthful and plausible.

Wife is 57 years old and holds a high school diploma. She has taken a few hours of college course work but has earned no credits towards a college degree. Nevertheless, Wife enjoys excellent health and testified she enjoys working. The evidence in this case demonstrates Wife earned income in either part-time or full-time employment throughout the duration of the marriage. Wife has worked as a manager of an ice-skating facility, where she also taught lessons, in retail sales, as an employment staffing recruiter, and most recently as an assistant to the owner of a real estate management business (albeit for no compensation). According to her testimony, Wife has enjoyed learning about the real estate management business and she expressed an interest in learning how to be a real estate sales agent. She acknowledges she would need some formal training to prepare for a real estate license, but she did not offer any testimony regarding the anticipated expense of such training. On her own initiative and before filing for divorce, Wife took classes in order to become proficient in various computer office applications such as Word, Excel, and Outlook.

There is no reason why it would be undesirable for Wife to seek employment outside the home. The Parties' only child is emancipated, college educated, and earning income through employment.

The Parties are equally at fault for the demise of the marriage. Therefore, this factor bears no weight in the determination of alimony.

Neither Party has separate assets that impact the question of alimony. The division of marital property has vested Wife with liquid assets in the amount of $650,000.00. The majority of these assets are in tax advantaged retirement accounts. Wife would not be able to take distributions from these retirement accounts for at least two more years, without incurring an early withdrawal penalty. Approximately $103,000.00 of the assets distributed to Wife is in an account from which Wife can take distributions without incurring an early withdrawal penalty.

The annual total return of the S&P 500 stock index since 2000 has averaged 10.93%. Assuming Wife realized a return at half that rate, she could

reasonably foresee generating annual income from investments, two years from now, in excess of $35,000.00.

Although she worked and earned income for most of the marriage, Wife's primary role was as a parent and homemaker. In these capacities, she contributed to Husband's ability to earn income and succeed in his career. In return, Husband's income was used to pay for all the recurring family expenses, including credit card balances incurred by Wife, while Wife's income was hers to spend as she wished. The Parties' lifestyle as a successful business couple, which included the ability to own both a principal marital residence in Tennessee, as well as, a condo in Arizona, was commensurate with Husband's substantial annual income. Consequently, Wife fell into spending habits unconstrained by the need for repayment. Wife will therefore need some transitional period to adjust her personal habits to the realities of being divorced.

On the basis of those findings the court ordered:

Husband shall pay to Wife as transitional alimony in accordance with Tennessee Code Annotated § 36-5-121(g), in the amount of $2,000.00 per month for 24 months, beginning on the first day of the month immediately following thirty (30) days after entry of this Memorandum and Order, and $1,000 per month for twenty-four (24) months, beginning on the twenty-fifth (25th) month of payments.

Wife does not challenge the sufficiency of the evidence to support the court's findings or cite to evidence that preponderates against them. She asserts that the trial court "applied incorrect legal standards, resolved the case on a clearly erroneous assessment of certain elements of the evidence, and reached a clearly unreasonable decision, and thus abused its discretion" by awarding her transitional alimony rather than alimony *in futuro* and by failing to award future dental expenses and attorney's fees to her as alimony *in solido*. We address these issues in turn.

### 1. Alimony *in Futuro*

A court may award alimony *in futuro* when it:

finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce

standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(f)(1). Our Supreme Court observed in *Gonsewski* that:

Alimony *in future* "is not, however, a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse." In many instances, the parties' assets and incomes simply will not permit them to achieve the same standard of living after the divorce as they enjoyed during the marriage. While enabling the spouse with less income "to maintain the pre-divorce lifestyle is a laudable goal," the reality is that "[t]wo persons living separately incur more expenses than two persons living together." "Thus, in most divorce cases it is unlikely that both parties will be able to maintain their pre-divorce lifestyle...." It is not surprising, therefore, that "[t]he prior concept of alimony as lifelong support enabling the disadvantaged spouse to maintain the standard of living established during the marriage has been superseded by the legislature's establishment of a preference for rehabilitative alimony."

350 S.W.3d at 108 (citations omitted).

The trial court held that Wife "is not in need of rehabilitation." Wife does not challenge the holding, but argues that the court "failed to address whether or not rehabilitation was feasible," and "should have found, based on the evidence and assumptions made by the trial court, that rehabilitation required to achieve the standard of living equities envisioned in the statutes was not feasible." Wife's argument is not supported by citations to the evidence as required by Tennessee Rule of Appellate Procedure 27(a)(7); consequently, our analysis of this issue is informed by the court's factual findings, as quoted above. On the basis of those findings, we conclude that the evidence does not preponderate against the finding that Wife is not in need of rehabilitation and that the evidence does not preponderate in favor of an award of alimony *in futuro*. Significant findings that lead to our conclusion are:

- Wife was 57 years old at the time of the divorce, with a high school education, and has been employed part-time or full-time for substantial periods during the marriage, and was currently under-employed "due to her personal choice to spend most of her available working time performing uncompensated work for her paramour, [ ], in his real estate management business."
- Wife enjoys excellent health, and testified that she enjoys working and that she is interested in becoming a real estate agent
- Wife is confident that she can earn between $40,000 and $50,000 a year once she is gainfully employed

- Wife acknowledged that she "would need some formal training to prepare for a real estate license, but . . . did not offer any testimony regarding the anticipated expense of such training"
- The division of marital property vested Wife with liquid assets of $650,000, of which $103,000 could be accessed immediately without incurring an early withdrawal penalty
- Husband's average income over the last five years was $210,232, and that, due to declines in the manufacturing industry and other economic factors, he has a "reasonable future horizon for working at his present level of compensation of only six or seven more years"[2]
- The court held that Wife's sworn statement of monthly expenses was not reliable

In addition to supporting the holding that Wife is not in need of rehabilitation, these findings support the award of transitional alimony. The practical effect of the award is to allow Wife four years of monthly support as Wife re-enters the workforce, presumably full-time, and otherwise adjusts to the consequences of divorce. On the record presented, the court did not abuse its discretion in awarding transitional alimony.[3]

### 2. Alimony *in Solido*

Wife next argues that the trial court erred by not awarding her future dental expenses as alimony *in solido*. In declining to award this cost, the court stated:

> Wife has requested alimony in solido in the amount of $5,000.00 ostensibly for future dental expenses. She also requests reimbursement of what she claims as travel expenses she incurred in connection with this litigation.

> Wife has failed to carry her burden of proof with respect to the reasonableness and necessity of these alleged expenses. In particular, Wife

---

[2] The trial court stated that "Husband's testimony on this topic [was] truthful and plausible."

[3] The Tennessee Supreme Court addressed the abuse of discretion standard in *Eldridge v. Eldridge*:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

42 S.W.3d 82, 85 (Tenn. 2001) (internal citations omitted).

has failed to prove the dollar amount of the alleged expense with reasonable certainty.

Wife argues that she proved the reasonableness, necessity, and amount of the dental expenses she claimed through the estimate of dental treatment that was received into evidence and her testimony.

The estimate of dental expenses, entitled "Treatment Plan," was introduced as Exhibit 70; the exhibit shows a plan consisting four visits where various services would be performed, totaling $7,925.00. In her testimony regarding this exhibit, Wife acknowledged that dental insurance was available to pay for the service; Wife did not explain why this amount should be awarded as alimony *in solido* as opposed to billing the treatment to her insurance. Inasmuch as the touchstone for an award of alimony is the disadvantaged spouse's need, Wife failed to make the necessary showing; consequently, the court did not abuse its discretion in declining to make this award.

Wife also asserts that the trial court erred by not awarding her attorney's fees as alimony *in solido*; relative to this request, the trial court held:

Wife has already received $30,000.00 of marital assets for payment of attorney fees pendente lite. Husband has used marital assets to pay for his attorney fees.

The Court finds Husband has the ability to pay some or all of Wife's attorney fees. At the same time, however, both Parties equally committed inappropriate conduct bringing about the demise of the marriage. Moreover, Wife engaged in vexatious and inequitable conduct during the course of this litigation, including, but not limited to: refusing to cooperate in discovery, providing false answers to discovery, installing spyware on Husband's computer without Husband's knowledge, and obtaining a continuance of the trial by duping her counsel of record into repeating false assertions to the Court. Wife's conduct unreasonably increased the cost of litigation to Husband. Wife admitted she installed this spyware in order to track Husband's use of his personal computer, but that this tactic produced no information Wife deemed usable. An award of attorney fees to Wife would appear to be placing the Court's stamp of approval on Wife's egregious misconduct as a litigant. This is something the Court will not countenance.

(footnote omitted).

Wife argues that the trial court's order "does not show that it considered, as is required, the relevant factors listed in Tenn. Code Ann. § 36-5-121(i)" and the court

"abused its discretion by ignoring the factors upon which it should have based its decision, and by failing to make inquiries as necessary to come to a just conclusion." On the record presented, we cannot conclude that the court abused its discretion by not awarding Wife her attorney's fees.

"When determining whether to award attorney's fees, the trial court must consider the relevant factors regarding alimony set forth in Tenn. Code Ann. § 36-5-121(i)." *Cain-Swope v. Swope*, 523 S.W.3d 79, 100 (Tenn. Ct. App. 2016). "Moreover, trial courts are afforded wide discretion in determining whether there is a need for attorney's fees as alimony in solido, and the trial court's decision will not be disturbed on appeal absent an abuse of discretion." *Id.* (citing *Gonsewski*, 350 S.W.3d at 113).

In the alimony section of its Memorandum and Order, quoted earlier, the trial court made its findings as to the statutory factors and indicated those it found most relevant to the issue of alimony; as noted, Wife does not argue that the evidence does not support those findings or that other evidence preponderates against them. In the division of marital property, Wife received a net distribution of $884,046.83, which included, *inter alia*, a condominium in Arizona valued at $310,000, with equity valued at $122,956, $632,565.00 from a retirement account, an automobile valued at $16,342, $10,613.44 from various bank accounts, and $17,005.00 in stock options. The findings regarding the parties' inappropriate marital conduct was relevant to the factors set forth at Tennessee Code Annotated section 36-5-121(i)(11) and the discussion of Wife's conduct during litigation was within the scope of section 121(i)(12).[4] In ruling on this issue, the record shows that court applied the correct legal standard to the evidence; the decision was within the range of acceptable alternatives and, considering the record as a whole, was not an abuse of discretion. We affirm the denial of Wife's attorney's fees as alimony *in solido*.

B. **Attorneys' Fees on Appeal**

Both parties seek their fees incurred on appeal. This Court has stated:

[I]t is in the sole discretion of this court whether to award attorney's fees on appeal. As such, when this Court considers whether to award attorney's fees on appeal, we must be mindful of the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered.

---

[4] While Wife correctly asserts that "[t]he trial court has extensive contempt authority to deal with instances of misconduct described above, but did not chose to do so," her argument does not acknowledge that the decision to pursue contempt is a discretionary one, just as the decision at issue.

*Spigner v. Spigner*, No. E2013-02696-COA-R3-CV, 2014 WL 6882280, at *13 (Tenn. Ct. App. Dec. 8, 2014) (citations omitted). In our discretion, we decline to award fees to either party on appeal.

## II. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court in all respects; we decline to award attorney's fees on appeal.

_____
RICHARD H. DINKINS, JUDGE