IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 7, 2020 Session

## CHRISTINA LEE CAIN-SWOPE v. ROBERT DAVID SWOPE

**Appeal from the Circuit Court for Davidson County**
**No. 13D-991 Philip E. Smith, Judge**

_____

### No. M2018-02212-COA-R3-CV
_____

This is the second appeal stemming from the divorce of the parties. After a remand from this Court, the trial court established the amount of alimony in futuro that Wife owed to Husband based on Wife's ability to pay and Husband's need for alimony. The trial court also declined to grant a downward deviation in Wife's child support payments based on her payment of extraordinary educational expenses. The trial court's ruling was based on a proposed parenting plan never agreed upon by the parties yet referenced by this Court in its initial opinion. We affirm the trial court's award of alimony in futuro. However, we vacate the trial court's denial of a downward deviation and remand the decision to the trial court for further consideration.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Vacated in Part; and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J, joined.

Sarah Richter Perky, Franklin, Tennessee, for the appellant, Christina Lee Cain-Swope.

Michael K. Parsley, D. Scott Parsley and Joshua G. Strickland, Nashville, Tennessee, for the appellee, Robert David Swope.

## OPINION

### BACKGROUND

This is the second appeal of this case stemming from a complaint for divorce. Many of the facts regarding the history of this case are set out more fully in this Court's opinion in **Cain-Swope v. Swope**, 523 S.W.3d 79 (Tenn. Ct. App. 2016) *perm. app. denied* (Tenn. Apr. 12, 2017) (hereinafter "**Cain-Swope I**"). Christina Lee Cain-Swope

("Wife") and Robert David Swope ("Husband") were married on May 19, 1991, in Nashville. Together, they have three children, one of whom remained a minor when the present appeal occurred. While Husband was employed for the first four years of the marriage, he became a stay-at-home parent after the birth of their first child. During the marriage, Wife completed medical school and worked as a doctor in private practice and Vanderbilt University Medical Center ("Vanderbilt"). In 2011, Husband re-entered the workforce by accepting a job at Trader Joe's grocery store. Husband possesses a Bachelor's degree in fine arts from Middle Tennessee State University.

Wife filed a complaint for divorce from Husband in Davidson County Circuit Court ("the trial court") on March 26, 2013, alleging irreconcilable differences. Husband responded with an answer and counter-complaint for divorce that also alleged irreconcilable differences and inappropriate marital conduct. Wife amended her complaint to allege the grounds of inappropriate marital conduct and to request the court designate her the primary residential parent to the couple's two minor children at the time. Husband later asked the court to declare him the primary residential parent. Before trial, both parties filed a host of motions that sought a range of remedies, including financial contributions and altered parenting time.

The parties' divorce trial began on September 30, 2014, and continued for four non-consecutive days in November 2014, December 2014, and January 2015. The trial court subsequently entered a Memorandum Opinion and Final Decree of Divorce on April 8, 2015. In that decree, the trial court declared Wife and Husband divorced and named Wife the primary parent of the couple's two children who were minors at the time of the divorce. Wife was also ordered to pay $2,400.00 per month to Husband in alimony in futuro, $793.00 per month in child support to Husband, and $10,000.00 in alimony in solido to compensate Husband for his attorney's fees. The trial court entered a parenting plan that allocated 212 days of parenting time to Wife and 153 days of parenting time to Husband. The court-issued parenting plan did not discuss whether the minor children should continue to be enrolled in private school or how private school tuition should be paid.

Wife timely appealed the trial order's initial opinion and decree to this Court on May 8, 2015. On appeal, Wife raised the following issues: 1) whether the trial court's statements indicated bias requiring this Court to review the issue of alimony de novo; 2) whether the trial court erred in awarding $2,400.00 per month in alimony in futuro to Husband; 3) whether the trial court erred in calculating child support consistent with the state's child support guidelines for underemployment and extraordinary educational expenses; and 4) issues regarding the award of attorney's fees. This court heard oral arguments on this appeal on July 12, 2016, and issued its opinion on December 23, 2016.

In its opinion, this Court found no merit in Wife's allegations of bias against the trial court and affirmed the trial court's ruling regarding alimony in solido for attorney's

fees. We also affirmed the trial court's award of child support and finding that Husband was not voluntarily underemployed. Further, this Court found that Wife waived consideration of a potential downward deviation in child support for extraordinary educational expenses. While Wife waived the issue of extraordinary educational expenses by not raising it at trial, this Court also relied upon a proposed, yet unagreed to, parenting plan that stated that neither parent was under an obligation to pay for private school.[1]

Regarding spousal support, this Court affirmed the trial court's finding that Husband was the disadvantaged spouse, demonstrated a need for spousal support, and was a proper candidate for alimony in futuro. Thus, we concluded that the trial court did not err in awarding alimony in futuro and finding that rehabilitative alimony was inappropriate. Concerning the amount of alimony, however, we determined that "the trial court did not state any findings of fact to support an award of that amount." *Cain-Swope I*, 523 S.W.3d at 99. As such, we stated as follows:

> Because the trial court did not make adequate findings relative to its determination that Wife has the ability to pay the amount of alimony awarded to Husband, the award of alimony of $2,400 per month is vacated and the case is remanded for reconsideration of the amount of alimony, if any, to be awarded. In determining the amount of alimony, the trial court is directed to make findings of fact as to the reasonableness of each party's expenses, to ascertain the amount of alimony needed by Husband and the amount of alimony Wife is able to pay, and direct the entry of a judgment setting the appropriate amount of alimony in futuro. Whether to reopen the proof concerning this issue is left to the discretion of the trial court.

*Id.* at 100. Finally, this Court declined to grant attorney's fees to either party on appeal. Neither party filed a petition to rehear following this Court's opinion. Wife sought permission to appeal the case to the Tennessee Supreme Court, but her application was denied on April 12, 2017.

Following the issuance of this Court's opinion, Wife filed a Petition to Modify

---

[1] The specific language cited by *Cain-Swope I* is as follows:

> The parties agree as follows regarding private school [ elementary and high school] and college or vocational training after high school:
> Elementary, primary, and secondary pre-college private school shall include tuition, books, uniforms, and meals and shall be calculated as an ongoing special expense on the child support worksheet if the parent opting to pay for the same does so. ***However, neither parent shall be under an obligation for private school. Naturally, there shall be no obligation for college expenditures.***

*Cain-Swope I*, 523 S.W.3d at 94 (emphasis included).

Child Support and for a Show Cause Order on May 19, 2017. In that initial petition, Wife sought to lower her child support obligation, as one of the couple's children was about to reach the age of majority. Wife filed a separate Motion to Determine Scope of Proof for Remand Hearing to determine whether the trial court would reopen the proof on the issue of alimony in futuro. The trial court ordered that the proof would be reopened for a remand hearing and that discovery would be re-opened regarding the parties' incomes, expenses, and any potential unemployment or underemployment. The trial court further ruled that it would hear the petition to modify child support concurrently with the remand hearing. In an answer, Husband asked for the dismissal of the modification petition. Wife filed a trial brief on April 19, 2018, calling for a downward deviation based on extraordinary educational expenses based on her existing modification petition, as well as requesting, for the first time before the trial court, that she receive a deviation of child support for extraordinary educational expenses.

The trial court held concurrent hearings on April 25, 2018, and August 7, 2018, concerning both the modification of child support and the remanded alimony issue. Wife testified that she continued to operate with a substantial financial deficit and could not afford to continue paying alimony in futuro to Husband. However, the trial court questioned Wife's income and expenses submitted to the court, particularly the expenses that Wife admitted were listed twice on her submitted list of expenses. On rebuttal, Wife stated that her expenses for gas, groceries, going out to eat, and travel were inadvertently listed twice as expenses. Wife also testified that her monthly deficit was $2,400.00, nearly $1,800.00 less than listed in her submitted list of expenses. During her testimony, Wife requested a downward deviation for child support payments based on the private school tuition she paid for the couple's youngest child. Between the first and second dates of the hearing, Wife received a promotion and a pay raise of $557.00 per month. In his own testimony, Husband also maintained that he operated at a deficit and continued to need alimony. At the time of the remand, Husband made $2,769.00 per month while working at Trader Joe's, an increase of $356.77 per month since the divorce.

The trial court issued a Memorandum and Order on December 5, 2018. After a lengthy recitation of the testimony at the remand hearing, the trial court found that Wife's payment of $2,400.00 per month in alimony in futuro was appropriate and should continue. The trial court noted the increase in Wife's income and questioned her expenses as provided in her income and expense report and during her testimony. The trial court criticized Wife's listing of multiple expenses twice, found that one payment for household appliances no longer existed, and reduced her payments for attorney's fees and a loan from Wife's parents by half. Further, Wife's payment of private school tuition was considered voluntary by the trial court, which cited the proposed parenting plan used by this Court in its previous opinion. While the trial court "attempted to reconcile several inconsistencies and inaccuracies in [Wife's] income and expense statement[,]" it did not calculate Wife's ability to pay based on those inconsistencies. Instead, the trial court simply found that Wife could pay Husband $2,400.00 per month in alimony in futuro.

The trial court also examined Husband's need for alimony. The trial court reduced Husband's expenses for clothes and recreation by half and eliminated an expense that was for one of the parties' adult children. The trial court found Husband's testimony and accounting to be straightforward and stated that Husband maintained a deficit of $2,988.03 per month. Further, the trial court briefly considered the alimony award in light of the statutory factors provided in Tennessee Code Annotated section 36-5-121(i). Following that analysis, the trial court stated that "[m]any of these factors would justify an even larger alimony award to [Husband]." Nevertheless, the trial court ordered Wife to pay Husband $2,400.00 per month until his death or remarriage.

In addition, the trial court granted a modification of child support based on the couple's middle child reaching the age of majority. However, the trial court declined to grant a downward deviation to Wife for extraordinary educational expenses based on the private school tuition she continued to pay for her youngest son. As the trial court detailed,

> It would be patently unfair to now give [Wife] a credit against her child support obligation, considering the parties' agreement made prior to final hearing. This Court is bound by the Court of Appeals' decision. If this Court were to disregard the Court of Appeals' findings and conclusions, the Court would be altering the parties' agreement, which was accepted and approved by the Court of Appeals.

In addition, the trial court denied Wife's arguments that Husband remained underemployed. Because one of the parties' children reached the age of majority, Wife's child support obligation was reduced to $659.00 per month, retroactive to June 1, 2017. Finally, the trial court declined to award either Husband or Wife attorney's fees tied to the remand hearing. Wife timely filed a notice of appeal.

## ISSUES PRESENTED

As we perceive them, Wife raises the following issues on appeal:

1. Whether the trial court erred in awarding Husband $2,400.00 per month in alimony in futuro.
2. Whether the trial court erred by refusing to grant a downward deviation from Wife's child support obligation based on Wife's payment of extraordinary educational expenses.
3. Whether the trial court erred in failing to award attorney's fees to Wife on remand related to the modification of child support.
4. Whether Wife should be awarded attorney's fees on appeal.

DISCUSSION

## A. Extraordinary Educational Expenses

### 1.

We first consider Wife's argument that the trial court erred when it declined to reduce her child support obligation based on her private school tuition payments as extraordinary educational expenses. While we ruled that the issue was waived at the time of the initial appeal, we also stated that the "parties agreed that such an expense would be optional as is expressly stated in the parenting plan[.]" ***Cain-Swope I***, 523 S.W.3d at 94. When Wife petitioned to modify her child support obligations in 2017, the trial court denied the request solely on the basis of the ***Cain-Swope I's*** decision that Wife's obligation was voluntary under the cited parenting plan, despite never approving the agreement in the first place. Wife and Husband submit that a parenting plan was never agreed upon and that no order existed that governs the parties' private schooling.[2] After a thorough review of the record, we recognize that the particular parenting plan was only proposed by Wife and never agreed to and adopted by both parties.

Traditionally, the "law of the case" is established through an appellate court's final decision when a case is remanded for further proceedings. The "law of the case" binds the court on remand and further binds the appellate court if a subsequent appeal is taken following a remand order. ***Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.***, 975 S.W.2d 303, 306 (Tenn. 1998). However, the "law of the case" doctrine "does not erect an absolute bar to the renewed consideration of earlier-decided issues." ***Gray's Disposal Co., Inc. v. Metro. Gov't of Nashville***, 318 S.W.3d 342, 349 (Tenn. 2010). The doctrine applies to issues explicitly or implicitly decided by the court and does not apply to dicta. ***Id.*** (citing ***Memphis Publ'g Co.***, 975 S.W.2d at 306; ***Ladd ex rel. Ladd v. Honda Motor Co.***, 939 S.W.2d 83, 90 (Tenn. Ct. App. 1996)). Finally, the Tennessee Supreme Court has recognized that the doctrine is subject to some exceptions:

> The doctrine does not necessarily apply: (1) when the evidence offered at a trial or hearing following the remand is substantially different from the evidence in the earlier proceeding; (2) when the prior decision was clearly erroneous and would result in manifest injustice if allowed to stand; or (3) when the prior decision is contrary to a change in the controlling law which has occurred between the first and second appeal.

***Id.*** (citing ***Memphis Publ'g Co.***, 975 S.W.2d at 306; ***In re Estate of Boote***, 265 S.W.3d 402, 413 (Tenn. Ct. App. 2007)).

---

[2] Neither party, however, petitioned this Court to rehear the matter in light of this reliance in the initial opinion.

We conclude that at least one exception is present in this case. In the present case, the trial court stated that Wife and Husband entered into an agreement regarding the cost of private schooling and that "[i]f this Court were to disregard the Court of Appeals' findings and conclusions, this Court would be altering the parties' agreement, which was accepted and approved by the Court of Appeals." Based on the record available to the trial court and this Court alike, that assertion is understandable, but incorrect. Disregarding Wife's claim for modification of child support based on a proposed, but not agreed-to, parenting plan would be a clearly erroneous reliance on the record.

This Court must then consider whether this clear error "'would result in a manifest injustice if allowed to stand.'" *State v. Jefferson*, 31 S.W.3d 558, 561 (quoting *Memphis Publ'g Co.*, 975 S.W.2d at 306). In *Jefferson*, a trial court presented a jury with improper instructions, which a defendant argued led to a conviction of first-degree murder instead of second-degree murder. *Id.* at 561–62. While the improper instructions were clear error, our Supreme Court held that manifest injustice did not occur, as the jury had the opportunity to consider the charge of second-degree murder, the evidence admitted at trial overwhelmingly supported a first-degree murder conviction, and "no rational jury could have found [the defendant] guilty of second degree murder." *Id.* at 562.

Obviously, disregarding a jury's verdict in a murder case is not entirely analogous to the case of a high-income earner seeking a reduction in her child support obligation. However, as discussed *infra*, Tennessee child support jurisprudence allows an obligor spouse to seek a deviation of child support for extraordinary educational expenses. The trial court did not deny Wife's request on the basis that the circumstances did not support a deviation but solely on *Cain-Swope I's* mistaken reliance on a proposed parenting plan that was neither ordered by the trial court nor agreed by the parties. While the trial court may very well exercise its discretion to reject Wife's request for a deviation, the law also allows the trial court discretion to grant a deviation depending on the circumstances. Under these circumstances, we conclude that it would be unjust to deprive Wife of her ability to seek such a deviation and the trial court of its discretion to make that decision.

Finally, the language referenced by the trial court in the ruling is arguably dicta, as we concluded that Wife had waived her argument regardless of the terms of the proposed parenting plan. As previously discussed, dicta does not have a preclusive effect on cases following remand. *See Gray's Disposal*, 318 S.W.3d at 349. We therefore conclude that *Cain-Swope I* and the cited proposed parenting plan therein are not a bar to Wife's request to be awarded a deviation of child support due to extraordinary educational expenses.

**2.**

Wife's request for extraordinary educational expenses is governed by the

Tennessee Child Support Guidelines. In particular, the Guidelines provide that

> Extraordinary educational expenses may be added to the presumptive child support as a deviation. Extraordinary educational expenses include, but are not limited to, tuition, room and board, lab fees, books, fees, and other reasonable and necessary expenses associated with special needs education or private elementary and/or secondary schooling that are appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and the child were living together.

Tenn. Comp R. & Regs. 1240–02–04–.07(2)(g)(i)(1). Wife contends that she is entitled to a deviation in this case because she is paying private school tuition for the parties' remaining minor child. Husband disagrees, arguing that extraordinary educational expenses can only be added to—not subtracted from—a child support obligation based on the above language.

As decisions regarding child support include an element of discretion, they are reviewed through an abuse of discretion standard. *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005) *perm. app. denied* (Tenn. Mar. 20, 2006). An abuse of discretion can occur when a court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008). Further, "decisions regarding child support must be made within the strictures of the child support guidelines." *Id.* (citing *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith*, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004)). Discretionary decisions must also consider the applicable law and relevant facts of the matter. *Ballard v. Harzke*, 924 S.W.2d 652, 661 (Tenn. 1996). In addition, courts apply the state's child support guidelines as a rebuttable presumption. Tenn. Code Ann. § 36-5-101(e)(2).

Additionally, we consider Father's argument that the child support guidelines do not permit a downward deviation as a credit to the custodial parent for paying extraordinary educational expenses.[3] Concerning issues of statutory construction, we conduct a de novo review and are guided by the following:

Our resolution of this issue is guided by the familiar rules of statutory

---

[3] We note that the Wife and Husband raise two arguments regarding extraordinary educational expenses—the law of the case doctrine and whether the guidelines provide for a downward deviation in these circumstances. While we can conceive of additional arguments concerning whether Wife properly pleaded this request and whether Wife was required to show a material change in circumstances or a significant variance to support her request, we will not tax the length of this opinion with issues that were not raised by the parties.

construction. Our role is to determine legislative intent and to effectuate legislative purpose. The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose. When the language of the statute is clear and unambiguous, courts look no farther to ascertain its meaning. When necessary to resolve a statutory ambiguity or conflict, courts may consider matters beyond the statutory text, including public policy, historical facts relevant to the enactment of the statute, the background and purpose of the statute, and the entire statutory scheme. However, these non-codified external sources "cannot provide a basis for departing from clear codified statutory provisions."

*Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012) (citations omitted). As detailed in the state's child support guidelines, extraordinary expenses may be added as a deviation to a child support obligation when appropriate to the parents' finances and the child's lifestyle if the parents and child were still living together. Tenn. Comp R. & Regs. 1240–02–04–.07(2)(g)(i)(1). While Wife argues that she can reduce her child support obligations through this regulation, Husband contends that extraordinary educational expenses can only be added to, not subtracted from, a parent's child support award.

A brief review of the purpose of this portion of the child support guidelines informs our decision on this issue. The child support guidelines are applied as a rebuttable presumption in granting child support awards, the presumption can be rebutted when the court finds evidence "that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child or children, or equity between the parties." Tenn. Code Ann. § 36-5-101(e)(1)(a).[4] The Tennessee Supreme Court, when evaluating the superseded version of the child support guidelines, held that "wholesale imposition of private school tuition on a noncustodial parent may, in some instances, constitute just such an 'unjust or inappropriate' application of the guidelines that would warrant downward deviation." *Barnett v. Barnett*, 27 S.W.3d 904, 909 (Tenn. 2000). According to the *Barnett* court, a downward deviation that "would spread the cost of tuition equitably among the parties" could be applied by the courts when the cost of private school tuition was imposed entirely upon a non-custodial parent. *Id.* At the time, courts were mandated to apply the cost of extraordinary educational expenses in addition to a child support award. *See* Tenn. Comp. R. & Regs. ch. 1240–2–4–.04(1)(c) (1989) ("Extraordinary educational expenses and extraordinary medical expenses not covered by insurance shall be added to the percentage calculated in the above rule."). After *Barnett* and subsequent cases, the child support guidelines were altered to "confirm that additional expenses should be calculated separately and should be added to the basic support award." *Richardson*, 189 S.W.3d at

---

[4] Of course, the trial court must make written findings outlining why the presumption is rebutted, as required by statute. *See* Tenn. Code Ann. § 36-5-101(e)(1)(a).

728. Moreover, "these expenses should be considered on a case-by-case basis and . . . the courts should also consider whether the private elementary or secondary schooling is 'appropriate to the parent's financial abilities and to the lifestyle of the child if the parents and the child were living together.'" *Id.* (quoting Tenn. Comp. R. & Regs. 1240–2–4–.07(2)(d)) (referencing the child support guidelines language originally enacted in 2005 and which remained unaltered to the present day).

While the new guidelines give trial courts the discretion to add extraordinary educational expenses to child support, courts can also choose to depart from those guidelines when doing so would be unjust and inappropriate. *See* Tenn. Code Ann. § 36-5-101(e)(1)(a); Tenn. Comp. R. & Regs. 1240–2–4–.07(2)(d). As **Barnett** allows for courts to deviate from an inappropriate allocation of private school expenses to a non-custodial parent, we see no reason to apply a different standard to a custodial parent who also serves as the obligor in child support matters. In other jurisdictions, courts have found that a downward deviation or child support credit is possible when an obligor parent is paying all of a child's private school expenses. *See generally* **Berthelot v. Berthelot**, 2006–Ohio–1317, 2006 WL 709025, at *6, (Ohio Ct. App. Mar. 22, 2006) (holding that a trial court must determine whether a guideline amount of support was unjust, inappropriate, or not in the best interest of the children before lowering an obligor's child support payments based on private school tuition payments); **In re Marriage of Glueck**, 913 S.W.2d 951 (Mo. Ct. App. 1996) (holding that the decision to require an obligor parent to pay part of private school expenses "remains in the sound discretion of the trial court"). Moreover, Father cites no caselaw in which Tennessee courts have expressly rejected a request for a deviation of child support for the payment of private school tuition by the obligor parent on the basis that such a deviation is not permitted by the guidelines. *Cf.* **Fichtel v. Fichtel**, No. M2018-01634-COA-R3-CV, 2019 WL 3027010, at *23–24 (Tenn. Ct. App. July 10, 2019) (where a custodial mother waived an argument seeking a downward deviation for tuition purposes). Finally, this Court remains "bound to refrain from an interpretation of the [child support] guidelines that would lead to an absurd result." **Barnett**, 27 S.W.3d at 908 (citing **Business Brokerage Ctr. v. Dixon**, 874 S.W.2d 1, 5 (Tenn. 1994)). To allow a deviation not only to increase child support based on extraordinary expenses but also decrease child support in that situation appears to more fully correspond with the purpose of deviations to calculate child support on a case-by-case basis according to the parties' actual expenses and lifestyle. Tenn. Comp. R. & Regs. 1240–2–4–.07(2)(d). To hold otherwise would be to arbitrarily mandate that while some actual circumstances should be considered, others should be ignored.

With that in mind, a downward deviation in child support for extraordinary educational expenses can be appropriate when an obligor, custodial parent pays for private school tuition and is not credited for making those tuition payments. Inversely, failing to credit a parent for those private school expenses under these circumstances could be unjust and inappropriate under the state's child support guidelines. As shown in

the guidelines, courts must consider whether a deviation is "appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and the child were living together." *See* Tenn. Comp R. & Regs. 1240–02–04–.07(2)(g)(i)(1). These deviations, as outlined in the guidelines, are highly discretionary, should be determined on a case-by-case basis and rest securely within the judgment of the trial court. *See* Tenn. Comp R. & Regs. 1240–02–04–.07(1)(b). Here, the trial court rejected Wife's request for a deviation of child support not based on its determination of the parties' circumstances or the equities at issue, but on the unfortunately erroneous conclusion we made in *Cain-Swope I*. As such, we remand the issue to the trial court to evaluate whether a downward deviation is appropriate under the child support guidelines.

## B. Alimony in Futuro

We next consider Wife's argument that the trial court erred in awarding $2,400.00 per month of alimony in futuro to Husband. The amount of alimony in futuro that was awarded on remand also matched what the trial court awarded Husband after the initial divorce. On appeal, Wife argues that the trial court erred in awarding alimony in futuro, as she contends that she incurs a financial deficit each month and does not have the ability to pay such alimony. Husband argues that the trial court did not abuse its discretion in finding that Husband had a need for alimony and that Wife had the ability to pay $2,400.00 per month in alimony in futuro.

Tennessee courts have "consistently recognized that trial courts have broad discretion to determine whether spousal support is needed and, if so, to determine the nature, amount, and duration of the award." *Parrish v. Parrish*, No. W2013-00316-COA-R3-CV, 2013 WL 3203352, at *6 (Tenn. Ct. App. June 21, 2013). Further, a trial court's "'decision regarding spousal support is factually driven and involves the careful balancing of many factors.'" *Id.* (quoting *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011)). Accordingly, upon review, appellate courts are "disinclined to second-guess a trial judge's spousal support decision." *Kinard v. Kinard,* 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998). Instead, when reviewing a spousal support award, an appellate court's role is to "determine whether the trial court abused its discretion in awarding, or refusing to award, spousal support." *Parrish*, 2013 WL 3203352, at *5 (citing *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)). A trial court abuses its discretion when it "causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011)); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)). Therefore, when an appellate court is "reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." *Gonsewski*, 350 S.W.3d at 105–06 (citing *Wright*, 337 S.W.3d at 176; *Henderson v. SAIA, Inc.,* 318 S.W.3d 328, 335 (Tenn. 2010)).

In this particular matter, we previously affirmed the trial court's ruling that Husband qualified for alimony in futuro instead of rehabilitative alimony. *Cain-Swope I,* 523 S.W.3d at 98. However, the trial court's previous award was vacated "[b]ecause the trial court did not make adequate findings relative to its determination that Wife has the ability to pay the amount of alimony awarded to Husband[.]" *Id.* at 100. Further, we gave the trial court particular direction in developing its alimony analysis.

> In determining the amount of alimony, the trial court is directed to make findings of fact as to the reasonableness of each party's expenses, to ascertain the amount of alimony needed by Husband and the amount of alimony Wife is able to pay, and direct the entry of a judgment setting the appropriate amount of alimony in futuro. Whether to reopen the proof concerning this issue is left to the discretion of the trial court.

*Id.*

The trial court ostensibly followed this Court's directive by questioning some of Wife's expenses as "double dipping" or as already paid, reducing two of her other expenses by half, and considering the payment of her son's private school tuition to be voluntary. Following that analysis, the trial court stated the following in its order: "The Court has identified and attempted to reconcile several inconsistencies and inaccuracies in [Wife's] income and expense statement. Following that exercise as outlined hereinabove, the Court finds that [Wife] is able to pay [Husband] $2,400.00 per month in alimony *in futuro*."

We are troubled by the trial court's failure to make more specific findings, particularly in light of this Court's direction in *Cain-Swope I*. While the trial court followed the letter of this Court's opinion by making a specific finding that Wife had the ability to pay the previously ordered alimony award, the trial court did not make specific findings as to the bulk of Wife's expenses. In lieu of remanding for further proceedings as we did in *Cain-Swope I*, this Court has sometimes chosen to solider on in the face of insufficient findings. In that case, "we may conduct a de novo review of the record to determine where the preponderance of the evidence lies[.]" *Gooding v. Gooding*, 477 S.W.3d 774, 783 (Tenn. Ct. App. 2015) (citing *Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013)). Determining whether a trial court's order is sufficient to accord it appropriate appellate deference, however, is not subject to a bright line test. *Id.* at 782 (citing *In re Estate of Oakley*, No. M2014-00341-COA-R3-CV, 2015 WL 572747, at *10 (Tenn. Ct. App. Feb. 10, 2015)). Rather, the order must "include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Lovlace*, 418 S.W.3d at 35.

After a thorough review of the record, the trial court's order, and the parties' briefs, we conclude that the trial court's order is sufficient for purposes of appellate review in this particular case. Here, the order did not "simply stat[e] the trial court's decision, without more[.]" *Gooding*, 477 S.W.3d at 782 (quoting *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *8 (Tenn. Ct. App. Oct. 24, 2012)). Rather, the trial court specifically found that certain of Wife's expenses were overstated and that excluding these expenses resulted in Wife enjoying a sufficient surplus each month from which to remit alimony to Husband. In due deference to the trial court, once the trial court deducted the few expenses it expressly disapproved, including certain loan and credit card payments and the private school tuition, Wife was left with a surplus more than sufficient to meet the $2,400.00 alimony award. As such, the trial court may have believed that no other findings were necessary. Moreover, neither party in this case takes issue with the sufficiency of the trial court's findings and both parties concede that the trial court's alimony decision is entitled to deference on appeal. Under these circumstances, we decline to conclude that the trial court's order is so deficient as to require either a second remand or that we review the record de novo to determine where the preponderance of the evidence lies. As such, we will consider whether the trial court's overall decision that Wife had the ability to pay alimony in the amount of $2,400.00, and that Husband had need of at least this amount, under the deferential standard accorded to typical alimony decisions. We will therefore "'presume that the [trial court's] decision is correct and should review the evidence in the light most favorable to the decision.'" *Lovlace*, 418 S.W.3d at 16–17 (quoting *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105–06 (Tenn. 2011)).

Determining the parties' incomes is not difficult. Wife concedes that her gross income at the time of the remand hearing had increased to $15,573.77 per month. Likewise, Husband's income had increased by $356.77 per month, resulting in an undisputed actual gross income of $2,769.00 per month while working at Trader Joe's. While the issue is not specifically raised on appeal, Wife continues to insinuate in her appellate brief that Husband is underemployed and could be earning more income through a promotion or a different line of work. In our initial opinion, however, we affirmed the trial court's ruling that Husband was not underemployed and that no deviation for underemployment should be granted in Wife's alimony obligations. *Cain-Swope I*, 523 S.W. at 93. As discussed more fully with regard to child support, a court is bound by the "law of the case" previously decided by another court, though exceptions exist when evidence offered in a new proceeding is substantially different than the previous evidence offered, when a prior decision was a clearly erroneous one that would manifest injustice, or when the prior decision conflicts with a change in controlling law that occurred between a first and second appeal. *Memphis Publ'g Co.*, 975 S.W.2d at 306. After our review of the evidence presented on remand, Wife's continued reliance on Husband's alleged underemployment is not rooted in any of exceptions to the law of the case doctrine and should not be given further credence. As such, Husband's income for purposes of alimony was correctly set at $2,769.00 per month.

- 13 -

The parties' expenses are the primary source of contention in this case. We begin with Wife's expenses. During the remand hearing, Wife attempted to establish her expenses as $18,897.11 per month, leaving a deficit of $4,198.35 each month. Wife's claimed expenses were as follows:

| | |
|---|---|
| Home Mortgage (Taxes and insurance included) | $1,566.81 |
| Flood Insurance | $35.42 |
| Utilities (gas, water, cable, internet) | $405.00 |
| Home general upkeep and maintenance | $95.00 |
| Home Appliance/furniture repair/replacement | $80.00 |
| House cleaning | $182.00 |
| Lawn maintenance | $40.00 |
| Clothing - Mother | $50.00 |
| Cell phone - Mother and 3 children | $191.81 |
| Mother hair care, cosmetics, other grooming | $83.75 |
| Mother lesson and activities (camping) | $10.35 |
| Child Tuition and school supplies | $1,363.33 |
| Child clothing and shoes | $80.00 |
| Child lessons/extracurricular | $10.00 |
| Medical Insurance mother and child | $269.69 |
| Mother/children uncovered medical, prescriptions, vitamins (after flex spending has been used) | $15.00 |
| Groceries | $567.00 |
| Meals out | $152.00 |
| Auto loan | $642.00 |
| Auto Gasoline Mother | $50.00 |
| Auto insurance | $74.92 |
| AAA, License, emissions, maintenance | $30.00 |
| Parking - Mother work - required (auto deduct from pay) | $16.00 |
| Credit card payments | $2,486.26 |
| Life insurance | $39.15 |
| Long Term Disability | $46.92 |
| Umbrella Insurance | $16.33 |
| Dues - Team Green Camping | $2.50 |
| Tithe | $80.00 |
| Other donations | $25.00 |
| Vacation (2015 - 2017 average) | $696.00 |
| College travel expenses | $42.00 |
| Entertainment (sports, movies) | $50.00 |
| Gifts - holidays, birthdays (mother and children) | $175.00 |
| Books (Kindle/hardback) | $6.25 |
| 403(B) Mandatory | $905.72 |

| | |
|---|---|
| Child support | $793.00 |
| Alimony | $2,400.00 |
| Attorney fees | $1,464.34 |
| Accounting Fees | $16.00 |
| Federal Income Tax | $1,115.00 |
| State Sales Tax | $173.00 |
| OASDI/EE | $865.21 |
| MED/EE | $206.35 |
| Health Spending account | $200.00 |

However, the trial court rejected Wife's claimed deficit. Following our review of the evidence, we agree that Wife's expenses above are not reasonable.

First, Wife admitted that some of her expenses were inadvertently inflated due to double billing certain credit card expenses. Specifically, Wife stated during rebuttal that her expenses for groceries, going out to eat, gas, and travel should not have been included in her credit card expenses. Combined, this "double-dipping" amounted to $1,465.00 per month in reduced expenses. Further, Wife testified during the remand hearing that her expenses for state sales tax ($173.00 per month) should not have been included in her calculations, and that home appliance expenses ($80.00 per month) had already been paid in full. Wife also included her current alimony obligation ($2,400.00 per month) in her expenses, which should not be included in calculating her future alimony payments. Although the trial court's order does not specifically reference these expenses, reviewing the trial court's decision in the light most favorable to it, we conclude that removing these expenses is appropriate given that Wife admitted that these expenses were not correct. *See **Lovlace***, 418 S.W.3d at 16–17.

The trial court also specifically reduced or eliminated payments related to attorney's fees, loans, and private school tuition. We begin with the attorney's fees and loan payments. The trial court reduced Wife's attorney's fees payments by $731.17 per month, while her loan payments to her parents were reduced by $541.50 per month. Both reductions do not appear to be extraordinary, and we are disinclined to second-guess the trial court's reasoning in this instance. *See **Gooding***, 477 S.W.3d at 781 (quoting ***Lee Med., Inc. v. Beecher***, 312 S.W.3d 515, 524–25 (Tenn. 2010)) (noting that the abuse of discretion standard "does not permit reviewing courts to second-guess the court below"). In its order, the trial court also reduced Wife's child support payments by $134.00 per month after a child reached the age of majority, regardless of any ruling about extraordinary educational expenses. Clearly, this reduction was warranted as Wife's child support obligation was reduced.

With regard to one expense, however, we must part ways with the trial court's decision☐the exclusion of son's private school tuition as a necessary and reasonable expense of Wife. In its analysis, the trial court rejected Wife's contention that this

expense should be considered in calculating her ability to pay alimony, citing the ***Cain-Swope I's*** panel's conclusion that this obligation was entirely voluntary. In support of this conclusion, we cited a proposed parenting plan that was not agreed upon by the parties or ordered by the trial court. As stated, *supra*, at least one exception to the law of the case doctrine exists that dictates that we depart from this particular reasoning in ***Cain-Swope I***. ***Memphis Publ'g Co.***, 975 S.W.2d at 306. We therefore decline to rely on this proposed parenting plan in determining whether the payment of private school tuition should be considered a reasonable and necessary expense for purposes of determining Wife's ability to pay alimony.

In our view, Wife and Husband's actions indicated an understanding and a desire to keep their children enrolled in private school. Each of their children have been enrolled in private schools for their primary and secondary educations, and neither parent objected to their private education. At trial, Husband made a lackluster effort of providing evidence of other schools where the parties' son could enroll, but provided no clear plan for removing the child from his long-standing enrollment at his current private school. In similar circumstances, this court has previously considered tuition expenses as necessary expenses for determining need and ability to pay in the alimony context. *See **Velez v. Velez***, No. M2014-01115-COA-R3-CV, 2015 WL 3990705, at *6 (Tenn. Ct. App. June 30, 2015) (considering tuition as an expense of the obligor parent in determining need and ability to pay alimony); ***Floyd v. Floyd***, No. M2007-02420-COA-R3-CV, 2008 WL 5424014, at *12 (Tenn. Ct. App. Dec. 30, 2008) (affirming the trial court's decision to deny alimony to wife when husband's necessary expenses, including private school tuition, exceeded his income); ***Bostick v. Bostick***, No. 02A01-9202-CH-0004, 1993 WL 90363, at *5 (Tenn. Ct. App. Mar. 30, 1993) (considering tuition as an expense of the obligor parent in determining need and ability to pay alimony). An abuse of discretion occurs when the decision is based on a "clearly erroneous assessment of the evidence[.]" ***Konvalinka***, 249 S.W.3d at 358. Here, the trial court's ruling was based on this Court's erroneous assessment of the record in the prior trial. Rather, the evidence shows that the parties generally acquiesced in the private schooling of the children and never agreed that Wife would be solely responsible for the private school tuition. As such, Wife's payment of private school tuition should be considered a reasonable and necessary expense for purposes of determining her current ability to pay alimony.

In addition to these expenses that were either specifically excluded by the trial court or admitted as inaccurate by Wife, Husband urges this Court to exclude an additional payment from Wife's necessary and reasonable expenses: $182.00 per month in house cleaning services. While the trial court did not explicitly reject this expense in its ultimate ruling, the trial court questioned the need for house cleaners during the remand hearing. As we review the trial court's decision in the most favorable light, we determine this expense was one that the trial court would have considered in its analysis if it had not relied upon private school tuition as a voluntary expense. *See **Lovlace***, 418 S.W.3d at 16–17. Given the considerable deference due to the trial court's overall decision to award

alimony of $2,400.00 to Husband, we conclude that this expense could be properly excluded as voluntary. During the length of the marriage, house cleaning services were used occasionally and not consistently. Further, Wife's current household and residence are smaller than during the marriage itself. Finally, it appears that in recent years, Wife has taken a position that requires her to work less hours she previously worked during the bulk of the marriage. Thus, while affording the trial court's overall alimony award a presumption of correctness, we conclude that this expense should be excluded for purposes of determining Wife's ability to pay alimony.[5]

When these reductions in expenses are combined, this Court concludes that the trial court did not abuse its discretion in determining that Wife has the ability to pay alimony up to $2,400.00 per month. Here, after removing all of the unnecessary expenses outlined above, Wife's expenses total $13,189.44 per month. By these calculations, Wife therefore enjoys a surplus of $2,384.33 per month. We concede that there is a minor discrepancy of $15.66 per month between the ordered amount of alimony and Wife's surplus; however, we recognize the Court's discretion in decisions of alimony and that "a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)); *see also Folger v. Folger*, No. E2014-02069-COA-R3-CV, 2016 WL 7786448, at *6 (Tenn. Ct. App. Jan. 28, 2016) ("This Court does not tweak or second-guess trial courts on alimony determinations[.]"). While an abuse of discretion occurs when alimony would create a "substantial deficit for the obligor spouse," we do not believe that a $15.66 deficit in a $2,400.00 alimony award creates a deficit substantial enough to overturn the trial court's ruling. *See Ezekiel v. Ezekiel*, No W2014-02332-COA-R3-CV, 2015 WL 4916930, at *7 (Tenn. Ct. App. Aug. 17, 2015) (citing *Gonsewski*, 350 S.W.3d at 106) (where a $200.00 per month alimony in futuro payment was reduced to $43.00 per month). Here, Wife continues to earn considerable income as a medical doctor and could adjust to this alimony amount with minor reductions in her expenses. For these reasons, we cannot conclude that Wife met her burden to show that the trial court abused its discretion in finding Wife had the ability to pay $2,400.00 per month in alimony in futuro.

Further, the record supports the trial court's finding that Husband's need for alimony in futuro exceeded $2,400.00 per month. After reducing his clothes expenses by $150.00 and recreational expenses by $300.00 and eliminating a $326.22 expense for one of the parties' adult children, the trial court found that Husband's monthly deficit was $2,988.03 per month. This deficit accounted for Husband's increased income of $2,769.00 per month, which is the highest monthly pay he had ever received. Wife argues that Husband's expenses were overstated by $2,076.10 and that his need for

---

[5] Even if we were to review this particular expense under a de novo standard, see *Gooding*, 477 S.W.3d at 783, we would conclude that the evidence cited above supports a finding that this expense was not reasonable and necessary under the circumstances of this case.

- 17 -

alimony is less than half of the current alimony award. Upon review of the trial court's findings, we conclude that Husband's expenses are largely reasonable and that the trial court's reductions were not illogical. As the trial court found, Husband's income and expenses were straightforward and not entirely beyond reason. Wife, however, contends that some of Husband's expenses should be lowered because they were directed at the couple's adult children. Respectfully, we disagree. As the trial court found and the evidence shows, both Wife and Husband claimed expenses that related to their adult children. For example, Wife's grocery expenses are $567.00 per month, purportedly for only herself and one minor child, while her cell phone expense is $181.91 each month and admittedly includes service for not only Wife and her minor child, but also for the adult children. Even if the trial court further cut $300.00 per month for an aspirational vehicle purchase or $200.00 per month in unreasonable recreation expenses, those amounts would not lower Husband's need for alimony below the current amount of $2,400.00. From our review, the trial court's analysis of Husband's need for alimony did not apply an incorrect legal standard, reach an illogical result, resolve the case through a clearly erroneous assessment of the evidence, or rely on reasoning that causes injustice. *See **Wright***, 337 S.W.3d at 176. With that in mind, we cannot conclude that the trial court abused its discretion in setting Husband's need for alimony. Because Wife's ability to pay alimony approximately matches the amount of alimony in futuro granted by the trial court, we affirm the trial court's ruling regarding the appropriate amount of alimony in futuro.

## C.  Attorney's Fees

Wife argues that the trial court erred in failing to award attorney's fees to her for the modification of her child support obligation. When the remand hearing began, Tennessee Code Annotated section 36-5-103(c) stated that:

> The plaintiff spouse may recover from the defendant spouse . . . reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c) (2017). When the hearing concluded more than three months later, the statute had been amended to allow recovery of attorney's fees to a prevailing party to modify or enforce any decree of support. Tenn. Code. Ann. § 36-5-103(c) (2018). This statute would apply both during the original divorce and in a subsequent hearing. *Id*. The trial court continued to have discretion with the amended statute, and we would apply an abuse of discretion standard in either case. *See **Huntley v. Huntley***, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001).

The trial court found that Wife would not be entitled to attorney's fees on remand under either version of the statute. While neither Wife nor Husband clearly succeeded on remand, we have vacated the trial court's ruling on Wife's child support obligation and remanded it for reconsideration under the state's child support guidelines. Because an issue remains to be decided by the trial court, we are hesitant to award or deny attorney's fees at the trial court level. With that in mind, we vacate the denial of attorney's fees at trial and remand the decision to the trial court to determine with Wife's child support obligation.

Separately, Wife requested an award of attorney's fees from this Court for her present appeal. "[T]he decision to award attorney fees incurred on appeal lies solely within the discretion of the appellate court." *Stancil v. Stancil*, No. M2017-01485-COA-R3-CV, 2018 WL 1733452, at *2 (Tenn. Ct. App. Apr. 10, 2018) (citing *Andrews v. Andrews*, 344 S.W.3d 321,340 (Tenn. Ct. App. 2010)). After considering Wife's request and the result of this appeal, we decline to award attorney's fees to her in this matter.

## CONCLUSION

The judgment of the Circuit Court of Davidson County is affirmed in part and vacated in part. This cause is remanded to the trial court for further proceedings as necessary and consistent with this Opinion. Costs of this appeal are assessed one-half to Appellant Christina Lee Cain-Swope and one-half to Appellee Robert David Swope, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE
