FILED
03/26/2026
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 24, 2026 Session

**KELLY LISH, ET AL. v. O. RAYMOND LOWRY, ET AL.**

**Appeal from the Chancery Court for Hamblen County**
**No. 2020-CV-538   Douglas T. Jenkins, Chancellor**

_____

**No. E2025-00364-COA-R3-CV**

_____

This breach of contract case involves a partnership dispute where one partner who undertook the winding down of the long-term partnership sought (1) reimbursement of loans and advances made to cover partnership expenses together with interest thereon; (2) compensation for services rendered on behalf of the partnership and attorney fees; and (3) taking into account the foregoing, disbursement of partnership funds to the partners. The other two partners disputed the claims and made counterclaims. Because we cannot ascertain whether the trial court's findings of fact and conclusions of law support the judgment, we vacate the judgment and remand it for the entry of a more detailed order that reflects that it is the product of the trial court's individualized decision-making and independent judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Vacated; Case Remanded**

JOHN W. MCCLARTY, P.J. E.S, delivered the opinion of the court, in which KRISTI M. DAVIS and D. KELLY THOMAS, S.J., joined.

Oliver D. Adams and Leah Walker McClanahan, Knoxville, Tennessee, for the appellants, Kelly Lish and LLW.

Adam G. Russell, Knoxville, Tennessee, and H. Scott Reams, Morristown, Tennessee, for the appellees, David Walker and O. Raymond Lowry.

## MEMORANDUM OPINION[1]

### I. BACKGROUND

On August 1, 1994, Dr. Kelly Lish, Dr. O. Raymond Lowry, and Dr. David A. Walker (collectively "Partners") formed a general partnership known as LLW ("Partnership" or "LLW"). Dr. Lish owned a 50% interest in the Partnership, while Drs. Lowry and Walker split the remaining half of LLW. The "singular purpose" of LLW was to own and operate an office building located in Morristown. The Partners conveyed the building to the Partnership, and, as pertinent to this appeal, the agreement provided as follows: "All actions of the partnership shall require the consent of all the partners excepting, however, the payment of recurring and ordinary expenses which expenses the managing partner shall handle for LLW, by drafts drawn on a checking account in the name of LLW." Dr. Lish served as the managing partner.

Each of the Partners had the use of an office suite which corresponded in square footage to that person's percentage ownership in the Partnership. They shared expenses according to their percentage ownership. The Partnership agreement permitted the withdrawal of a Partner by allowing the remaining members to either liquidate the business and terminate the agreement or elect to continue by purchasing the Partnership interest of the withdrawing Partner.

On February 11, 2016, Dr. Walker sent a letter notifying the Partners of his intent to withdraw, effective July 1, 2016. On April 4, 2016, Dr. Lowry also indicated his intent to leave the Partnership. When Dr. Walker provided his notice of withdrawal, neither Dr. Lish nor Dr. Lowry were interested in purchasing Dr. Walker's 25% Partnership interest in LLW. Similarly, when Dr. Lowry announced his intention to withdraw, Dr. Lish was not interested in buying Dr. Lowry's 25% Partnership interest. Further, no third party wanted to buy either Partnership interest. Subsequently, the Partners disagreed on how to liquidate the Partnership. Meanwhile, Dr. Lish continued in his management and invoiced the Partnership for expenses in 2016, 2017, and 2018.

According to Dr. Walker, he did not pay Dr. Lish anything toward the Partnership expenses after his withdrawal in 2016. Because Dr. Lowry was paying still for the gas and utilities, Dr. Walker claimed that he directly reimbursed Dr. Lowry for those expenses.

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Further, Dr. Walker asserted that he paid money toward the cost of the HVAC replacement for the building.

On January 7, 2018, a pipe burst in the building, causing significant water damage. Nationwide Insurance ("Nationwide") prepared an estimate for repairs. According to Dr. Lish, he thereafter handled the restoration of the building, hiring workers and paying them from his own personal funds. He subsequently submitted invoices to the Partnership and remitted payment to himself as project manager. Nationwide paid over $275,000 on the insurance claim. Believing cabinets personally owned by Dr. Lish were owned by the Partnership, Nationwide valued the cabinets at $64,582.[2] It appears Dr. Lish then paid himself with Partnership funds for the loss of the cabinets. Additionally, Dr. Lish began invoicing the Partnership for his time and travel allegedly related to his duties as managing partner. He paid himself at a rate of $125 per hour and charged the Partnership 18% interest on loans he made to LLW to cover certain expenses.

On December 29, 2020, Dr. Lish filed suit against Drs. Lowry and Walker (collectively "Defendants"), alleging that they failed to infuse the Partnership with sufficient funds, requiring him to advance his own personal funds for partnership expenses that they refused to pay. Dr. Lish requested the sale of the building, reimbursement of expenses, reimbursement of damages relating to the burst pipe as result of Defendants' failure to maintain the property, and compensation for his services provided in managing the winding down of the Partnership. Dr. Walker filed a counter-complaint on February 11, 2021, in which he alleged that Dr. Lish breached the Partnership agreement, breached his fiduciary duty to terminate and liquidate LLW, and wrongfully converted Partnership funds. On March 29, 2021, Dr. Lowry likewise made the same counterclaims.

The damage and repair work, which lasted two years, interrupted the efforts to sell the building. It was sold on March 8, 2022, for $999,900. Two days later, net proceeds of the sale in the amount of $937,652.66 were deposited with the court.

A bench trial was held on August 23, 2024. In the oral ruling at the end of trial, the court observed that "you all still got some work to do because you've got to pull out of these numbers the things that he actually did spend money on and properly reimburse himself for," and directed that "you all can arrive at those numbers and you can all argue, but the goal here for the Court is to arrive at three numbers, a number that the clerk should write Dr. Lowry's check for, a number that the clerk should write Dr. Walker's check for, and the number that the clerk should write Dr. Lish's check for…." The trial court directed the parties to file post-trial briefs.[3] The final judgment, entered on February 14, 2025, provided, *inter alia*, as follows:

---

[2] Dr. Lish had procured the cabinets from a prior subtenant. Most of the cabinets were not affixed to the building.

[3] Defendants submit that the post-trial briefs were essentially "proposed findings of fact and

With regard to plaintiff Kelly Lish's ("Plaintiff") claim for reimbursement of interest on personal loans he advanced to the LLW General Partnership ("LLW"), the Court stated: "I think under one theory of the case, perhaps the loans were unnecessary, and the loans themselves may be in question. But then let's assume hypothetically they were necessary. The court finds that the interest rate should be zero because I don't believe that the partners ever got together and agreed on an interest rate, and that just doesn't seem like something that would be in the ordinary course that a managing partner could agree to, particularly when it inured to his own benefit. So any loans that were made, the interest rate is deemed by the Court to be zero."

With respect to Plaintiff paying himself the insurance monies allocated to LLW for the loss of cabinets in Plaintiff's suite,[4] the Court found that the "cabinets were paid through LLW claim and coverage" and "that's LLW money that should be reimbursed by [Plaintiff], and that's whatever amount he paid himself for the cabinets…"

As to the question of what rate should Plaintiff be permitted to charge … LLW for his time handling administrative services, the Court stated: "first of all, there is no agreed prearranged rate. So it's to the Court, as [Plaintiff] said, to determine the proper rate of pay per hour. And the Court finds that's $25 an hour, and the Court finds A, that that is a fair amount, under the circumstances, particularly since 50 percent of any rate that he would charge inures to his own benefit. It's just – it seems like a fair amount to the Court for administrative type services, or even carpentry, whatever it may have been. $25 an hour sounds eminently fair to the Court, and it also is equitable, in the Court's opinion, to [Plaintiff] because it inures to his benefit, and even if it's a little low he was doing work 50 percent for himself, so it's still an equitable amount."

The Court further found that it was not proper for Plaintiff to zero out the replacement cash value amount paid by the insurance company through the payment/retention of excess proceeds from the LLW insurance claim. The Court also found that Plaintiff's out of pocket expenses for materials purchase to re-do the building at issue were proper and should be reimbursed accordingly by LLW along with Plaintiff's time at the rate of $25 per hour.

---

conclusions of law," submitted pursuant to the guidance of the trial court's oral ruling.

[4] In the post-trial comments, the court found "that if in fact those were his personal cabinets they were uninsured, and so I don't believe it was proper for him to remove that money from the LLW account for the cabinets. If those were his own personal cabinets he should have insured them with some kind of tenant policy or something of that nature…."

The transcript of the Court's post-trial findings is attached hereto as **Exhibit A** and incorporated herein by reference.

The parties then filed post trial briefs, which were considered by the Court in making its final award… ***Specifically, the Court adopts the position advanced in the post-trial brief submitted by the defendants … and the Court finds that the allocation shown on page 11 of the Defendants' post-trial brief is an appropriate distribution of the proceeds***, which are held in the registry of this Court. Further, this Court finds that to the extent Plaintiff's post-trial brief includes a request that this Court alter its prior findings and conclusion or to add new requests for relief, the Plaintiff's request is respectfully DENIED.

It is, therefore, ORDERED, ADJUDGED AND DECREED:

1. That Plaintiff Lish recover $359,543.35, which is held in the registry of this Court.

2. That Defendant Lowry recover $300,397.52, which is held in the registry of this Court.

3. That Defendant Walker recover $277,711.79, which is held in the registry of this Court.

4. That each party bear its own attorneys' fees.

It is further ORDERED:

1. That the Clerk distribute the proceeds *instanter* payable to counsel for the respective parties … and those said funds be held in the respective counsel's trust accounts pending the running of the applicable period for appeal or until the final resolution of an appeal, if any.

2. Any remaining issues not addressed in this Order are hereby DISMISSED.

3. The unpaid costs of this cause shall be taxed in proportion as follows" 50% to Plaintiff Lish, 25% to Defendant Lowry, and 25% to Defendant Walker.

(Italicized emphasis added).

Page 11 of the Defendants' joint post-trial brief provided the distribution that the court adopted. Defendants noted in their appellate briefs that the bases include:

(1) An explanation of what each partner actually owes LLW, taking into account Lish's improper charges, including LLW expenses, the HVAC replacement cost, and Lish's administrative work that he overbilled at $125/hour;

(2) The insurance proceeds for the cabinets that Lish improperly pocketed in the amount of $70,715.45 as those cabinets were part of the LLW Building insurance claim; and

(3) Lish's excess charges for restoration work which he paid himself $253,539 since the Court determined that Lish's methodology of zeroing-out the Xactimate insurance estimate was not appropriate.

The trial court did not make any further findings of fact or conclusions of law in rendering the judgment. The arguments and calculations contained in the post-trial brief were not evaluated or reproduced in the judgment. The post-trial brief, submitted to this court in a supplemental filing, is 70 pages long with the included exhibits.

## II. ISSUES

We restate the issues raised for review by Dr. Lish and the partnership as follows:

1. Whether the court failed to make specific and sufficient findings of fact and conclusions of law;

2. Whether the court erred in setting Dr. Lish's hourly rate for winding down the partnership at $25 per hour;

3. Whether the court erred in finding that Dr. Lish was not entitled to interest on loans made to the partnership and failing to make a determination of whether the loans were loans under the Act;

4. Whether the court erred in finding that Dr. Lish was not entitled to the insurance proceeds for reimbursement to his personal property, e.g., the cabinets;

5. Whether the court erred in finding Dr. Lish's method of reimbursement erroneous (finding that the Xactimate/RCV allocation of insurance proceeds was controlling);

6. Whether the court erred in its denial of attorney fees incurred in winding down the partnership.

Defendants challenge whether the court erred in its dismissal of their counter-complaints and request attorney fees on appeal pursuant to Tennessee Code Annotated section 27-1-122.

### III. STANDARD OF REVIEW

Under Rule 13(d) of the Tennessee Rules of Appellate Procedure, we review the trial court's factual findings *de novo* upon the record with a presumption of correctness. Tenn. R. App. P. 13(d). We review the trial court's legal conclusions *de novo* with no presumption of correctness. *Mitchell v. Mitchell*, No. E2017-00100-COA-R3-CV, 2019 WL 81594, at *3 (Tenn. Ct. App. Jan. 3, 2019).

### IV. DISCUSSION

We first must address Dr. Lish's assertion that the trial court failed to issue specific findings of fact and conclusions of law. Defendants contend that their joint post-trial brief, beginning on page 6, clearly explains the method they used in recalculating what was owed to the Partnership by the respective Partners. They assert that the final judgment, through its incorporation by reference of Defendants' post-trial brief, sufficiently reflects the decision of the trial court, including its findings of fact and conclusions of law, and demonstrates the final judgment was a product of the trial court's own deliberations and decision.

Rule 52.01 of the Tennessee Rules of Civil Procedure provides, in pertinent part, that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Thus, "[i]n bench trials, trial courts must make findings of fact and conclusions of law to support their rulings." *Hardin v. Hardin*, No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at *3 (Tenn. Ct. App. Oct. 20, 2020) (citations omitted). "[T]he findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013). A trial "'court must go beyond mere summation by linking the evidence to its clearly stated findings of fact and conclusions of law.'" *Rosebrough v. Caldwell*, No. W2018-01168-COA-R3-CV, 2019 WL 6898218, at *4 (Tenn. Ct. App. Dec. 18, 2019) (quoting *In re S.S.-G.*, No. M2015-00055-COA-R3-PT, 2015 WL 7259499, at *12 (Tenn. Ct. App. Nov. 16, 2015)). "'Without such findings and conclusions, this court is left to wonder on what basis the [trial] court reached its ultimate decision.'" *Babcock v. Babcock*, No. E2014-01670-COA-R3-CV, 2015 WL 1059003, at *6 (Tenn. Ct. App. Mar. 9, 2015) (quoting *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009) (quoting *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004))).

As Judge Steven Stafford of this court recently observed in *Steinburg v. Steinburg*, No. W2022-01376-COA-R3-CV, 2023 WL 8827667, at *3 (Tenn. Ct. App. Dec. 21, 2023):

A court speaks through its written orders. *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015). Our Supreme Court has emphasized that a trial court's decisions must result from its own independent judgment. *Smith v. UHS of Lakeside, Inc.,* 439 S.W.3d 303, 312 (Tenn. 2014). This requirement stems from the understanding that

> [t]he essential purposes of courts and judges are to afford litigants a public forum to air their disputes, and to adjudicate and resolve the disputes between the contending parties. To carry out these purposes, judges must arrive at their decisions by applying the relevant law to the facts of the case. Because making these decisions is a "high judicial function," a court's decisions must be, and must appear to be, the result of the exercise of the trial court's own judgment.

*Id*. (emphasis added) (citations omitted). Moreover, "[i]n addition to expecting judges to be 'fair, impartial, and engaged,' the litigants, the bench and bar, and the public expect them to explain why a particular result is correct based on the applicable legal principles"; indeed, a trial court "[p]roviding reasons for a decision reinforces the legitimacy of the legal process which, in turn, promotes respect for the judicial system." *Id*. at 312–13 (citations omitted).

Accordingly, "[a] trial court's verbatim adoption of verbiage submitted by the prevailing party detracts from the appearance of a hardworking, independent judge and does little to enhance the reputation of the judiciary." *Id*. at 316. As such, "findings of fact, conclusions of law, opinions, and orders prepared by trial judges themselves are preferable to those prepared by counsel." *Id*. at 314. Two conditions exist for the acceptance of party-prepared findings of fact, conclusions of law, or orders: (1) "the findings and conclusions must accurately reflect the decision of the trial court" and (2) "the record must not create doubt that the decision represents the trial court's own deliberations and decision." *Id*. at 316 (citations omitted). Thus, "when the record provides no insight into the trial court's decision-making process, or when the record 'casts doubt' on whether the trial court 'conducted its own independent review, or that the opinion is the product of its own judgment,'" reviewing courts have declined to accept a trial court's use of party-prepared findings or conclusions. *Id*. (citations omitted); . . . *Cunningham v. Eastman Credit Union*, No. E2019-00987-COA-R3-CV, 2020 WL 2764412, at *5 (Tenn. Ct. App. May 27, 2020) ("Based upon the record before us, we cannot determine that [appellee's] proposed findings of fact and conclusions of law, adopted nearly verbatim by the trial court, represent the trial court's own independent analysis and judgment."); *Regions Com. Equip. Fin., LLC v.*

*Richards Aviation Inc.*, No. W2018-00033-COA-R3-CV, 2019 WL 1949633, at \*8 (Tenn. Ct. App. Apr. 30, 2019) (noting that "neither the oral ruling nor the written order give the factual or legal basis of the court's ruling and ... the basis [is] not readily apparent; neither is there any indication that the court considered the disputed facts or [appellant's] affirmative defenses").

We find that we are hampered in our review of the trial court's judgment because, in our view, it does not contain sufficient factual findings and conclusions of law. We note that the document upon which much of the decision of the trial court is based is entitled, "DEFENDANTS['] POST TRIAL BRIEF," not "Proposed Findings of Fact and Conclusions of Law." Dr. Lish argues that the trial court did not explain why the positions advanced by Drs. Lowry and Walker in the trial brief were correct and did not undertake or demonstrate an independent evaluation of the allocations advanced by them; did not include a finding of fact as to the quantity of Dr. Lish's time necessary to produce the amount of compensation to which he would be entitled, nor did it include a calculation of the allowed compensation against the compensation Dr. Lish received to determine the resulting net amount; did not contain a finding as to what the amount of reimbursement for Dr. Lish's out-of-pocket expenses would be; did not resolve the issue of whether the loans Dr. Lish made were proper; did not recite the amounts of the loans or the interest due (or not due); did not account for any credit or debit against Dr. Lish's share of the distribution; and did not reference Tennessee's Revised Uniform Partnership Act, Tennessee Code Annotated section 61-1-101, et seq. ("Act") or contain any application of the Act. Accordingly, further findings and conclusions, among others, appear necessary and essential to resolve the dispute among the Partners. Additionally, the court did not make findings of fact and conclusions of law regarding the attorney fee arguments.[5] *See Harthun v. Edens*, No. W2015-00647-COA-R3-CV, 2016 WL 1056060, at \*5 (Tenn. Ct. App. Mar. 17, 2016) (holding that an order concluding that a party is not entitled to attorney fees without an explanation of the rationale supporting the conclusion did not comply with Rule 52.01).

In the matter before us, rather than incorporating proposed "findings of fact" or "conclusions of law," the court's judgment adopted the positions of Defendants' in a post-trial brief — an argumentative document — as its holding. A trial brief is not drafted by a party so much to present an adequate factual basis for deciding a case as it is by design and the rules of advocacy to provide a legal basis for decision in favor of the party submitting it.

---

[5] The court noted that "[a]fter we decide the issues between the partners, then we can decide the attorney fee issue." The trial court, without further explanation, ordered that "each party bear its own attorneys' fees."

Under the circumstances, the final judgment cannot be said to properly afford this court the findings and conclusions essential for a meaningful, informed review. Because "we [are] deprived of one of the primary purposes of Rule 52.01, which is to facilitate appellate review by 'affording a reviewing court a clear understanding of the basis of a trial court's decision,'" *Cain-Swope v. Swope*, 523 S.W.3d 79, 99 (Tenn. Ct. App. 2016) (citations omitted), we vacate and remand for the entry of more detailed findings of fact and conclusions of law. *Lake v. Haynes*, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011).

## V. CONCLUSION

The judgment is hereby vacated, and this cause remanded for further proceedings consistent with this opinion. Costs of the appeal are taxed to the appellees, O. Raymond Lowry and David Walker, for which execution may issue if necessary.


s/John W. McClarty_____
JOHN W. MCCLARTY, JUDGE